## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

NUCOR CORPORATION,

                                        Plaintiff,

            v.

UNITED STATES,

                                        Defendant.

Before: Hon. _____

Court No. 21-00182

## COMPLAINT

Plaintiff Nucor Corporation ("Plaintiff" or "Nucor"), by and through its attorneys, alleges and states as follows:

### ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1. Plaintiff brings this Complaint to contest portions of the U.S. Department of Commerce's ("Commerce") final results of the 2018 administrative review of the countervailing duty order on *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*. The final results were issued on March 16, 2021 and were published in the *Federal Register* on March 22, 2021.  *See* Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 86 Fed. Reg. 15,184 (Dep't Commerce Mar. 22, 2021) (final results and partial rescission of countervailing duty admin. rev.; 2018) ("Final Decision Memo").

### JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and (B)(iii) of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii).

Court No. 21-00182

## STANDING

3.   Plaintiff is a U.S. producer of carbon and alloy steel cut-to-length plate products, is an interested party within the meaning of 19 U.S.C. § 1677(9)(C), and was a party to the administrative review in connection with which this matter arises.   Accordingly, Plaintiff has standing to commence this action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF ACTION

4.   Plaintiff commenced this action by filing a Summons on April 21, 2021, within 30 days after the publication of the Final Results in the *Federal Register*.   Summons (Apr. 21, 2021), ECF No. 1.   Plaintiff is filing this Complaint simultaneously with the Summons.   The Summons and Complaint, therefore, are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(i)(I) and pursuant to Rules 3(a)(2) and 6(a) of this Court.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

5.   On April 4, 2017, Commerce published its final determination in the countervailing duty investigation of *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*. *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 82 Fed. Reg. 16,341 (Dep't Commerce Apr. 4, 2017) (final affirm. countervailing duty deter. and final negative critical circumstances deter.).   On May 25, 2017, Commerce published the countervailing duty order in the *Federal Register*. *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 82 Fed. Reg. 24,103 (Dep't Commerce May 25, 2017) (countervailing duty order).   Commerce initiated the administrative review subject to this Complaint on July 15, 2019, covering the period of review ("POR") of January 1, 2018 to December 31, 2018. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 33,739 (Dep't Commerce July 15, 2019).   On August 2, 2019, Commerce selected

Court No. 21-00182

POSCO as the sole mandatory respondent. Memorandum from Robert Palmer, Senior Int'l Trade Compliance Analyst, AD/CVD Operations, Off. VIII, through Kathleen Marksberry, Program Manager, AD/CVD Operations, Off. VIII, to Irene Darzenta Tzafolias, Director, AD/CVD Operations, Off. VIII, re: *Countervailing Duty Administrative Review: Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea; Respondent Selection* (Aug. 2, 2019).

6. On November 4, 2019, Plaintiff timely filed new subsidy allegations. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: New Subsidy Allegations* (Nov. 4, 2019). First, Nucor alleged that the Government of Korea provided countervailable subsidies to a cross-owned POSCO affiliate, POSCO Plantec, through a debt restructuring program, the benefits of which were attributable to POSCO through a cross-owned input supplier relationship under 19 C.F.R. § 351.525(b)(6)(iv). *Id.* at 2-7. Second, Nucor alleged that the Korean government provided countervailable subsidies to Korean cut-to-length plate producers in the form of electricity for less than adequate remuneration ("LTAR") during "off-peak" hours of the day. *Id.* at 7-17.

7. Nucor demonstrated that the Korean government's off-peak pricing for industrial users created a system of cross-subsidization specifically designed to enhance the competitiveness of certain energy intensive industries, including steel producers, that operate 24 hours per day and can shift consumption to off-peak hours when prices are set well below the cost of generation and supply. *Id.* Nucor provided both qualitative and quantitative evidence in support of this allegation. Reports in the Korean media, for example, confirmed that "the price for light load {electricity} has been set much lower than the supply cost for the time, and the peak charge has been set higher than the supply cost . . . ." *Id.* at 12, Exhibit 12. Nucor provided

**Court No. 21-00182**

information tying significant financial losses by the state-owned Korea Electric Power Corporation ("KEPCO") during the POR at least in part to below-cost "off-peak" industrial electricity prices. *Id.* at 12-13, Exhibit 12, Exhibit 16. Finally, Nucor quoted Korean government officials stating that, notwithstanding KEPCO's financial losses, off-peak prices would not be increased specifically because of the likely impact on the competitiveness of large industrial users like steel companies. *Id.* at 13, Exhibit 16.

8. In addition to this qualitative evidence, Plaintiff provided quantitative information confirming that the off-peak electricity prices paid by POSCO were significantly below KEPCO's cost of supply. First, Nucor provided POR Korean government data for the "system marginal price," which is the variable cost element of the price that KEPCO pays to purchase electricity through the Korea Power Exchange ("KPX"), KEPCO's wholly owned affiliate. Nucor included KEPCO's financial disclosures, which describe the system marginal price as "the marginal price of electricity at a given hour at which the projected demand for electricity and the projected supply of electricity for such hour intersect . . . ." *Id.* at 10, 14. Nucor showed that the average system marginal price during off-peak hours in the POR was KRW 93.17 per kilowatt-hour. *Id.* at 14-15. Second, Nucor provided Korean government data for the average "cost of sale" of industrial electricity during the POR, which was KRW 106 per kilowatt-hour. *Id.* at 15. Nucor also provided respondent-specific data that allowed Commerce to compare either of these prices to the prices that POSCO actually paid for off-peak electricity. *Id.* at 14. As Nucor's allegation noted, both the system marginal price and the cost of sale were cost-based prices that did not include an amount for profit and were therefore conservative estimates of the benefit conferred by the provision of off-peak electricity for LTAR. *Id.* at 15.

Court No. 21-00182

9.  On December 20, 2019, Commerce issued a supplemental questionnaire regarding Plaintiff's new subsidy allegations.  Letter from Kathleen Marksberry, Program Manager, Off. VIII, AD/CVD Operations, Enf't and Compliance, to Nucor Corporation, re: *Countervailing Duty Administrative Review of Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: New Subsidy Allegation Supplemental Questionnaire* (Dec. 20, 2019).  In relevant part, Commerce noted that "pages 35-36 of KEPCO's 20-F in Exhibit 8 of Nucor's NSA" include "other factors that determine the price for electricity other than the {system marginal price}."  *Id.* at 3.  Commerce asked Plaintiff to "explain how the {system marginal price} only impacts pricing at off-peak times."  *Id.*

10. Plaintiff responded to Commerce's supplemental questionnaire on December 31, 2019.  Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: New Subsidy Allegations Supplemental Questionnaire Response* (Dec. 31, 2019).  Plaintiff explained that the system marginal price and other elements referenced in KEPCO's form 20-F "are relevant only to transactions between the KPX and electricity generators, so that they do not affect the actual prices that end-users pay KEPCO for electricity," whether at off-peak times or otherwise.  *Id.* at 4.  Nucor noted, however, that KEPCO described the system marginal price as its own "estimate of a supply/demand electricity price, such that it is reasonable to believe that any price that is substantially lower than the {system marginal price} during a particular hour reflects a subsidized price."  *Id.* at 4-5. Second, Nucor noted that the relative stability of the system marginal price throughout the day contradicted any assertion that significantly lower off-peak electricity demand justified significantly lower industrial electricity prices during the POR.  *Id.* at 5.

Court No. 21-00182

11. Commerce issued its new subsidy allegation memorandum on April 1, 2020. Memorandum from Robert Palmer and Faris Montgomery, Int'l Trade Compliance Analysts, Off. VIII, AD/CVD Operations, through Katie Marksberry, Program Manager, Off. VIII, AD/CVD Operations, to Irene Darzenta Tzafolias, Director, Off. VIII, AD/CVD Opeartions, re: *Second Administrative Review of Countervailing Duty Order on Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea; Decision Memorandum on New Subsidy Allegations* (Apr. 1, 2020).  With respect to Plaintiff's first allegation, that POSCO Plantec received countervailable subsidies through a government-led debt restructuring program, Commerce found that no separate initiation was necessary because "{w}e are examining this alleged subsidy as a self-reported program in this review."  *Id.* at 4.  With respect to Plaintiff's second allegation, that the Korean government provided countervailable subsidies in the form of off-peak electricity for LTAR, Commerce declined to initiate an investigation because "Nucor did not provide sufficient evidence to support its allegation that . . . a benefit is conferred on POSCO in the form of off-peak electricity for LTAR."  *Id.* at 9.

12. With respect to the latter determination, Commerce found that the system marginal price "reflects the generation unit with the highest variable cost that receives a purchase order at any given hour" and "fails to account for the quantity of electricity provided by various generators that would affect the overall cost of the provision of electricity at that given hour." *Id.* at 7-8.  Commerce found that "KEPCO primarily utilizes the {system marginal price} in conjunction with the adjusted coefficient factor and the capacity price to calculate amounts owed to electricity generators," and that "any cost-based, market benchmark . . . should include these factors, because . . . KEPCO's cost of electricity is based on that formula."  *Id.* at 8.  Commerce found that KEPCO's financial losses did not support initiation because "we have previously

Court No. 21-00182

found that poor financial performance by a government-owned company in a particular year does not necessarily indicate that an input was being provided for LTAR." *Id.* Finally, Commerce determined that it would be inappropriate to examine off-peak prices in isolation because "Nucor has not provided sufficient information" that KEPCO's "{time-of-use} system" was "outside of the prevailing market conditions of an electricity utility in Korea." *Id.* at 9.

13. On April 9, 2020, Nucor filed a request for reconsideration of Commerce's new subsidy allegations determination with respect to the provision of off-peak electricity for LTAR. Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Request for Reconsideration of New Subsidy Allegation* (Apr. 9, 2020). First, Plaintiff pointed out that Commerce's new subsidy allegations determination ignored key evidence in the allegation. Specifically, in finding that the system marginal price was not evidence of a benefit because it purportedly "fail{ed} to account for the quantity of electricity provided by various generators" and thus "{did} not reflect the average cost of electricity provision," Commerce ignored the fact that Nucor provided Korean government data showing the average cost of sale for industrial electricity during the POR. *Id.* at 3-4.

14. Nucor also explained that its allegation accounted for the "quantity of electricity provided by various generators" by establishing that the mix of generators does not vary significantly throughout the day. *Id.* at 4. Nucor pointed to evidence establishing that a benefit was conferred even under an assumption that the lowest cost generator in Korea provided 100% of off-peak electricity during the POR. *Id.* at 7-8. Second, Nucor noted that Commerce's determination effectively defined "adequate remuneration" as whatever price resulted from the Korean government's pricing methodology and thus recreated the same type of price

Court No. 21-00182

discrimination or preferentiality analysis that the Court of Appeals for the Federal Circuit had recently rejected in Nucor v. United States.  *Id.* at 7, 9-10.

15. Commerce issued the preliminary results on July 20, 2020 and published them in the *Federal Register* on July 27, 2020.  Preliminary Decision Memorandum accompanying *Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 85 Fed. Reg. 45,185 (Dep't Commerce July 27, 2020) (prelim. results of countervailing duty admin. rev., and intent to rescind rev., in part; 2018).  The preliminary decision memorandum did not respond to Plaintiff's request for reconsideration of the decision not to initiate an investigation of off-peak electricity for LTAR.

16. With respect to POSCO and POSCO Plantec, Commerce preliminarily determined that any subsidies received by POSCO Plantec were not attributable to POSCO because "production of POSCO Plantec's input is not primarily dedicated to the production of the downstream product, including the subject merchandise."  *Id.* at 12.  Commerce explained that "POSCO's purchases of fixed assets and services from POSCO Plantec during the POR were for maintenance, repair and operation of pre-existing machinery," and that "the types of services that POSCO Plantec performed for POSCO are not a part of steel production that is dedicated primarily to the production of a higher value-added product."  *Id.* at 12-13.

17. Plaintiff filed its Case Brief on August 26, 2020.  Letter from Wiley Rein, LLP to Sec'y of Commerce, re: Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Case Brief (Aug. 26, 2020).  In its Case Brief, Plaintiff reiterated its arguments that Commerce's new subsidy allegations determination regarding the provision of electricity for LTAR was unlawful and unsupported by the record.  *Id.* at 3-12.  Plaintiff also argued that Commerce's determination that the inputs supplied by POSCO Plantec are not "primarily

Court No. 21-00182

dedicated" to steel production was unlawful and unsupported by the record, and that benefits conferred through POSCO Plantec's debt restructuring program should be attributed to POSCO. *Id.* at 12-25. Plaintiff argued that Commerce had treated nearly identical inputs as "primarily dedicated" in other proceedings and that there was no basis for treating them differently in this review. *Id.* at 12-21.

18. Commerce issued the final results on March 16, 2021 and published them in the *Federal Register* on March 22, 2021. Final Decision Memo. Commerce "continue{d} to find that Nucor provided insufficient evidence to initiate an investigation into the alleged provision of off-peak electricity for LTAR." *Id.* at 20. Commerce found that "the {system marginal price} is both a maximum cost not statistically reflective of an average unit cost and a variable in the formula used by KEPCO to determine market payment to electricity generators." *Id.* at 22. With respect to the evidence establishing that the mix of generators supplying electricity, and thus the cost of supplying electricity, does not vary significantly throughout the day, Commerce found that it "cannot determine what those costs are from the information provided," and that it "cannot reasonably assume that the same generators were providing electricity at similar quantities at peak and off-peak hours . . . ." *Id.*

19. With respect to the "average cost of sale" data that Plaintiff provided, Commerce found that it "is the average price that KPX charged KEPCO across all hours," which "could be a suitable benchmark for comparing the tariff rates POSCO paid for electricity across all hours," but not as evidence of a benefit for "the provision of off-peak electricity." *Id.* Commerce explained that it could not use this information as evidence of a benefit unless it "can be isolated to off-peak hours . . . ." *Id.*

Court No. 21-00182

20. With respect to the evidence of KEPCO's significant financial losses during the POR, Commerce found that "one year without cost recovery {is not} sufficient to demonstrate that a government-owned entity is not recovering its costs." *Id.* at 23.   In addition, Commerce suggested that Nucor's allegation was limited to cost recovery, while the agency's decision "also addressed industry preferentiality, i.e., whether the {Government of Korea}'s provision of off-peak electricity for LTAR was consistent with market principles." *Id.*   Commerce "found there was insufficient evidence in the allegation indicating the existence of a benefit from price discrimination in the {Government of Korea}'s provision of off-peak electricity." *Id.* at 24. According to Commerce, Plaintiff's allegation contained "no . . . evidence whatsoever that POSCO or the steel industry were offered or granted a lower electricity price unavailable to the rest of the market." *Id.* at 25.

21. Commerce added that it did not apply an unreasonably high standard for the initiation of a new subsidy allegation.   Commerce explained that "it is the burden of the party making the allegation to identify the elements of a countervailable subsidy, and to support the allegation with sufficient evidence . . . ." *Id.* at 26.   The agency explained that it "examined the allegation and the supporting documentation therein for evidence providing the existence of a benefit . . . and found the information Nucor provided regarding the benefit to be insufficient." *Id.*

22. With respect to the alleged cross-owned input supplier relationship between POSCO and POSCO Plantec, Commerce explained that it "examined Plantec's business activities . . . and concluded that Plantec's production is not 'dedicated almost exclusively to the production of a higher value product' . . . ." *Id.* at 33.   With respect to steel scrap, Commerce distinguished prior determinations based on the fact that "Plantec generated the scrap, but neither produced nor provided the scrap to POSCO." *Id.* at 34.   With respect to the steelmaking equipment and

Court No. 21-00182

services, Commerce determined that "it would be unreasonable to conclude that the inputs at issue are dedicated almost exclusively to the production of downstream products and that they are merely a link in the overall production chain." *Id.* It added that "record evidence does not demonstrate that Plantec provided steelmaking machinery or equipment; it only provided services related to such equipment to POSCO." *Id.* at 36.

23. Based in part on these findings, Commerce assigned a *de minimis* subsidy rate of 0.49% for POSCO. *Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 86 Fed. Reg. at 15,185. It applied this rate to all companies not selected for individual review. Final Decision Memo at 8-10.

## CLAIMS AND BASES FOR RELIEF

### Count I

24. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 23.

25. Commerce's decision not to initiate an investigation of the provision of off-peak electricity for LTAR because Plaintiff provided insufficient evidence of a benefit was not supported by substantial evidence and was otherwise not in accordance with law.

### Count II

26. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 25.

27. Commerce's determination that any countervailable subsidies received by POSCO Plantec could not be attributed to POSCO because POSCO Plantec is not POSCO's cross-owned input supplier was not supported by substantial evidence and was otherwise not in accordance with law.

Court No. 21-00182

## <u>REQUEST FOR JUDGMENT AND RELIEF</u>

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1)      Hold that Commerce's final results in the countervailing duty administrative review of *Certain Cut-to-Length Steel Plate from the Republic of Korea* are not supported by substantial evidence on the record and are otherwise not in accordance with law; and

2)      Remand the Final Results to Commerce for disposition consistent with the Court's final opinion.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Adam M. Teslik, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
Phone (202) 719-7000

*Counsel for Nucor Corporation*

Date:  April 21, 2021