# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| NUCOR CORPORATION,<br><br>      Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>      Defendant,<br><br>  and<br><br>POSCO,<br><br>      Defendant-Intervenors. | **NON-CONFIDENTIAL**<br>Proprietary Information Removed from Pages 9-10<br><br>Court No. 21-00182 |

## POSCO'S COMMENTS IN SUPPORT OF
## THE AGENCY'S REMAND DETERMINATION

Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W.,
Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to POSCO*

February 19, 2024

# **TABLE OF CONTENTS**

I.   Commerce's Decision Not To Initiate On The Electricity For LTAR Program Is Supported By Substantial Evidence And Is In Accordance With Law. ..........................2

II.  Commerce's Decision That Plantec Is Not A Cross-Owned Input Supplier Is Supported By Substantial Evidence And Is In Accordance With Law. .........................7

III. Conclusion. ................................................................................................................12

IV.  Certificate of Compliance. .......................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Delverde, SrL v. United States*,
    989 F. Supp. 218 (Ct. Int'l Trade 1997) ........................................................................2, 3, 5

*Nucor Corporation v. United States*,
    653 F. Supp. 3d 1295 (Ct. Int'l Trade 2023) ................................................................ *passim*

*RZBC Group Shareholding Co., Ltd. et al. v. United States*,
    100 F. Supp. 3d 1288 (Ct. Int'l Trade 2015) ..........................................................................2

**Statutes**

19 U.S.C. § 1671a(b)(1)....................................................................................................................6

19 U.S.C. § 1677(5)(E) .....................................................................................................................5

**Other Authorities**

19 C.F.R. § 351.511(a)(2)(iii)......................................................................................................3, 5

19 C.F.R. § 351.525(b)(6)(vi).............................................................................................7, 8, 10, 11

*Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea:*
    *Final Results and Partial Rescission of Countervailing Duty Administrative*
    *Review; 2018*, 86 Fed. Reg. 15,184 (Dep't Commerce Mar. 22, 2021) ....................................1

*Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products*
    *From the Republic of Korea: Final Affirmative Determination*, 81 Fed. Reg.
    49,943 (Dep't Commerce July 29, 2016)..................................................................................5

*Final Affirmative Determination, and Final Affirmative Critical Circumstances*
    *Determination, in Part*, 80 Fed. Reg. 37,223 (Dep't Commerce June 30, 2015)......................5

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| NUCOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES,<br><br>　　　　Defendant,<br><br>　and<br><br>POSCO,<br><br>　　　　Defendant-Intervenors. | **NON-CONFIDENTIAL**<br>Proprietary Information Removed<br>from Pages 9-10<br><br>Court No. 21-00182 |

**POSCO'S COMMENTS IN SUPPORT OF
THE AGENCY'S REMAND DETERMINATION**

On behalf of Defendant-Intervenor POSCO and pursuant to Rule 56.2(h)(3), we hereby comment on the U.S. Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Second Court Remand, *Nucor Corporation v. United States*, Ct. No. 21-00182 (Ct. Int'l Trade 2023), ECF No. 93, PRR 16 ("*Second Redetermination*").[1]  The administrative determination at issue is *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea:  Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 15,184 (Dep't Commerce Mar. 22, 2021) ("*Final*

---

[1] Citations to the administrative record shall be to the public or confidential record document number ("PR" or "CR") followed by the page or exhibit number.  Citations to the remand administrative record shall be to the public or confidential remand record document number ("PRR" or "CRR") followed by the page or exhibit number.

*Results*"), ECF No. 18-4, PR 192, and accompanying Issues and Decision Memorandum ("Final Results IDM"), ECF No. 18-5, PR 187.

For the following reasons, the *Second Redetermination* is supported by substantial evidence and are otherwise in accordance with law.

I. **Commerce's Decision Not To Initiate On The Electricity For LTAR Program Is Supported By Substantial Evidence And Is In Accordance With Law.**

In its Remand Order, the Court directed Commerce to further explain the initiation standard it applied in light of the apparent differing initiation standards articulated by the court in the *RZBC* and *Delverde* decisions. *See Nucor Corporation v. United States*, 653 F. Supp. 3d 1295, 1302-03 (Ct. Int'l Trade 2023) ("*Nucor*") (citing *RZBC Group Shareholding Co., Ltd. et al. v. United States*, 100 F. Supp. 3d 1288, 1295 (Ct. Int'l Trade 2015) ("*RZBC*"); *Delverde, SrL v. United States*, 989 F. Supp. 218, 222 (Ct. Int'l Trade 1997) ("*Delverde*"), vacated on other grounds by *Delverde, SrL v. United States*, 202 F. 3d 1360 (Fed. Cir. 2000). Additionally, the Court found that Commerce had not responded to the additional information that Nucor provided to support its benefit allegation in the form of KEPCO's weighted-average off peak prices paid by POSCO compared to KEPCO's cost of acquiring electricity from its lowest cost generator. *Nucor*, 653 F. Supp. 3d at 1304. The *Second Redetermination* thoroughly addresses both of the Court's concerns.

In the *Second Redetermination*, Commerce explained that while it viewed "the initiation standard applied in *RZBC* and *Delverde* {as} one and the same," the universe of reasonably available evidence is larger in certain cases such as this one where the alleged program is a subset of a previously investigated program. *See Second Redetermination* at 9-10 & n.39. Given the previous decisions on the electricity for LTAR program in Korea, the "legal standard for initiation requires that the petitioner address or account for that additional information; in this

2

case, Commerce must consider all information reasonably available to the petitioner, as described in *Delverde*." *Id.* at 9. Commerce also emphasized that consideration of all reasonably available information was "particularly relevant when the allegation implicates a market principles analysis under 19 C.F.R. § 351.511(a)(2)(iii), because a market principles analysis frequently requires an assessment of an entire 'market' (*e.g.,* the Korean electricity market), which is significantly broader than the specific transactions that may be at issue in the allegation (*e.g.,* off-peak electricity purchases)." *Id.* at 9. Applying this initiation standard, Commerce continued to find that Nucor's failure to utilize reasonably available information in support of its benefit allegation rendered it deficient. *Second Redetermination* at 9-10.

In its comments in opposition to the *Second Redetermination*, Nucor argues that it did sufficiently allege the existence of a benefit and that Commerce fails to address the fact that "KEPCO's weighted-average off-peak prices paid by POSCO {were allegedly below} KEPCO's cost of acquiring electricity from its lowest cost generator." Nucor Corporation's Comments in Opposition to Second Remand Results at 4, *Nucor Corp. v. United States*, Ct. No. 21-00182 (Ct. Int'l Trade Jan. 19, 2024), ECF No. 96 ("Nucor's Comments"). Undergirding this argument is Nucor's comparison of "(i) the per-kWh unit price that KEPCO reported paying its lowest-cost generators during the POR, which is a variable cost not including any cost that KEPCO may incur in transmission and distribution" with "(ii) the per-kWh unit price that POSCO reported paying KEPCO for off-peak electricity based on the tariff schedule that was in effect during the POR." Nucor's Comments at 8. However, as Commerce correctly determined this comparison is not apples-to-apples and thus does not support Nucor's benefit allegation.

In the *Second Redetermination*, Commerce explained that the POSCO prices are *off-peak* specific whereas the price paid to Korea Hydro and Nuclear Power Company Ltd. ("KHNP") is

3

*not off-peak* specific because it represents a power trading price across all hours. *Second Redetermination* at 7, fn. 33; *compare* Letter from Wiley Rein LLP, "New Subsidy Allegations Supplemental Questionnaire Response" at Exhibit 1 p.38 (Dec. 31, 2019), PR 94 ("Nucor's NSA SQR"); *with* Letter from Wiley Rein LLP, "New Subsidy Allegation" at Exhibit 5 (Nov. 4, 2019), CR 182-84 (PR 76-78) ("Nucor's NSA"); *and* Letter from Morris, Manning & Martin LLP, "POSCO's Second Supplemental Questionnaire Response" at Exhibit C-35 (Feb. 27, 2019), CR 242-45 (PR 135) ("POSCO's Second Suppl. Response"). According to Commerce, "Nucor needed to provide an adjustment or justification for the fact that its allegation compared certain hours (*i.e.*, off-peak hours) and certain electricity types (*i.e.*, industrial electricity) to an average price across all hours." *Second Redetermination* at 13. Commerce concluded that information required to conduct such an adjustment or provide such a justification was reasonably available to Nucor in the financial disclosures and electricity power trading statistics from KEPCO or in the SEC Form 20-F. *Second Redetermination* at 12. Commerce thus reasonably determined the price that KEPCO paid KHNP for electricity across all hours is incomparable with the off-peak-specific price that POSCO paid and Nucor failed to provide information reasonably available to it.

    Nucor claims that Commerce faults Nucor "for not providing the precise benchmark information that it believes would be necessary for a final benefit calculation, without explaining what exactly that information is or how it was reasonably available to Nucor" and claiming that it "does not know how to obtain off-peak-specific transaction data for KEPCO's purchases from individual generators." Nucor's Comments at 6-9. But Commerce did not base the *Second Redetermination* on the inapt comparison alone, and further explained that Nucor failed to allege that "the electricity system is inconsistent with market principles or discriminatory in its

4

pricing," especially given Commerce previously determined the Korean electricity market was consistent with market principles. *Second Redetermination* at 10-11; *Countervailing Duty Investigation of Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Affirmative Determination, and Final Affirmative Critical Circumstances Determination, in Part*, 80 Fed. Reg. 37,223 (Dep't Commerce June 30, 2015), *aff'd*, *Nucor Corporation v. United States*, 927 F.3d 1243 (Fed. Cir. 2019); *Countervailing Duty Investigation of Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Final Affirmative Determination*, 81 Fed. Reg. 49,943 (Dep't Commerce July 29, 2016), *aff'd*, *POSCO v. United States*, No. 22-1525, slip op. at 9 (Fed. Cir. Oct. 23, 2023).

To find a benefit exists, Commerce must determine whether electricity is provided for less than adequate remuneration, and the adequacy of remuneration shall be determined in relation to prevailing market conditions for the electricity being purchased in the Republic of Korea. 19 U.S.C. § 1677(5)(E). In the tier (iii) analysis (*i.e.*, when world market prices are unavailable), adequacy of remuneration is measured "by assessing whether the government price is inconsistent with market principles." 19 C.F.R. § 351.511(a)(2)(iii). Nucor's new subsidy allegation not only failed to provide an apples-to-apples comparison for the benefit element, but totally failed to support a tier (iii) market principles analysis with information reasonably available to petitioner from prior reviews regarding Commerce's market principles analysis. Commerce thus appropriately analogized the instant case to *Delverde* because in that case, as here, there was a large amount of reasonably available information to support the allegation. *See id.* at 6-7. Commerce determined that "Nucor failed to provide sufficient information about the price setting methodology, terms of sale, *etc.* for off-peak electricity being reviewed in a tier three analysis," and that Nucor "should have been aware of the characteristics of the electricity

5

market in Korea, including, but not limited to, its operations, price setting method, cost system, availability to consumers, the relationship between KEPCO and the KPX, and how the KPX sets pricing for generators within Korea." *Second Redetermination* at 11, 25.

As Commerce explained in response to Nucor's comments on the draft remand, "a market principles analysis frequently requires an assessment of an entire 'market' (*e.g.*, the Korea electricity market), which is significantly broader than the specific transactions that may be at issue in the allegation (*e.g.*, off-peak electricity purchases)." *Second Redetermination* at 25.  Nucor's allegation "pertained *only* to the prices KEPCO paid to the generators through the KPX's pricing and KEPCO's electricity tariff schedule," and thus lacked reasonably available information that would "either call into question Commerce's previous determination that the Korean electricity system was consistent with market principles or demonstrate that the provision of electricity at specific, off-peak hours was inconsistent with market principles." *Second Redetermination* at 25.  As *Nucor* held, "Commerce may reasonably require Nucor to take account of the agency's prior findings when Nucor seeks to have the agency again examine the provision of electricity for less than adequate remuneration, albeit limited to a particular time of day." *Nucor*, 653 F. Supp. 3d at 1303.  Nucor thus failed to allege the elements necessary for the imposition of the countervailing duty with information reasonably available to it as required by 19 U.S.C. § 1671a(b)(1).

In sum, Commerce's determination to affirm its decision not to initiate on this deficient allegation is fully supported by substantial evidence, is in accordance with law, and addresses the concerns raised by the Court in *Nucor*.

6

## II. Commerce's Decision That Plantec Is Not A Cross-Owned Input Supplier Is Supported By Substantial Evidence And Is In Accordance With Law.

In *Nucor*, the Court directed Commerce to "reconsider or further explain its reasons for considering factors other than 'whether the supplier produced the input' and, if necessary, reconsider or further explain its decision" that the inputs that Plantec provided to POSCO were not primarily dedicated to the production of the downstream product. *Nucor*, 653 F. Supp. 3d at 1313. As part of its reconsideration of this issue, Commerce examined the threshold issue regarding whether POSCO and Plantec were "cross-owned" for subsidy attribution purposes and concluded that they are not.[2] *Second Redetermination* at 19.

Commerce's regulations define cross-ownership as follows:

Cross-ownership exists between two or more corporations where one corporation *can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets*. Normally, this standard will be met where there is a majority voting ownership interest between two corporations or through common ownership of two (or more) corporations.

19 C.F.R. § 351.525(b)(6)(vi). In the *Second Redetermination*, Commerce determined that POSCO does not control Plantec because the POSCO Plantec Creditor Financial Institutions Committee ("PPCFIC"), which was created as a part of Plantec's debt workout program, controls Plantec. *Second Redetermination* at 22. Commerce determined that the PPCFIC controlled Plantec because the PPCFIC "has the right to, among other things, call shareholder meetings, call board meetings, appoint or replace directors, approve applications for recovery and bankruptcy procedures, dispose of property, approve new financing and investment, approve mergers and

---

[2] In order to attribute subsidies received by an affiliate in a CVD case, Commerce must find that the affiliate is "cross-owned" and also that one of four additional criteria are present. These include the cross-owned company (i) being a parent of holding company; (ii) a producer of subject merchandise; (iii) providing an input product that is primarily dedicated to the production of the downstream product; or (iv) receiving a subsidy and transferring it to the respondent. *See generally* 19 C.F.R. § 351.525(b)(6)(1) thru (v).

7

acquisitions and provide borrowing guarantees." *Second Redetermination* at 21.  Additionally, Commerce explained that POSCO was not permitted by the Korean International Financial Reporting Standards ("K-IFRS") to include Plantec as a consolidated entity in their financial statements, *i.e.,* if POSCO controlled Plantec it would be treated as a consolidated subsidiary. Accordingly, because Commerce determined that POSCO and Plantec are not cross-owned, Commerce concluded that the primary dedication issue is moot.  *Id.*  Commerce's reconsideration of this issue and conclusion is supported by substantial evidence and is otherwise in accordance with law.

  Nucor disagrees and argues that Plantec is cross-owned because POSCO nominally owned a majority of Plantec's shares during the POR.  Nucor claims that the cessation of control by POSCO to the PPCFIC was a mere "partial loss of decision-making authority" that is "unreasonable because it turns on a Korean accounting technicality."  Nucor's Comments at 11-12.  Yet, substantial evidence demonstrates that POSCO does not use or direct the assets of Plantec in essentially the same ways it can use its own assets, which is the focus of the cross ownership analysis pursuant to the plain text of Commerce's regulation.  19 C.F.R. § 351.525(b)(6)(vi) ("Cross-ownership exists between two or more corporations where one corporation *can use or direct the individual assets of the other corporation(s) in essentially the same ways it can use its own assets*.").  The focus of the cross-ownership analysis is whether POSCO has the ability to "use or direct the individual assets" of Plantec in "essentially the same ways it can use its own assets."  19 C.F.R. § 351.525(b)(6)(vi).  Commerce determined that POSCO does not have the ability to control Plantec's assets as its own due to control being vested in the hands of the PPCFIC.  That decision is supported by substantial evidence.

8

POSCO's share ownership did not provide POSCO with the ability to control Plantec via majority voting ownership as the PPCFIC controlled Plantec. Specifically, under the Agreement for Compliance of Business Normalization Plan ("the Agreement"), the PPCFIC has the right to participate in the management of Plantec in a controlling manner as follows:

- [

]

*See* Letter from Morris, Manning & Martin, LLP, "POSCO's Response to Nucor's New Subsidy Allegations" at Attachment 1 (Nov. 21, 2019), CR 185 (PR 88) ("POSCO's NSA Response"). POSCO cannot control Plantec because Plantec must comply with the Agreement.

As Commerce explained, POSCO's inability to control Plantec is indicated in POSCO's 2018 consolidated financial statements. *Second Redetermination* at 21. Note 1(e) lists Plantec as a non-consolidated associate rather than a subsidiary pursuant to Korean International Financial Reporting Standards ("K-IFRS") and states that POSCO "lost its control and classified its shares as investment in associate." Letter from Morris, Manning & Martin, LLP, "POSCO's Response to the Affiliated Companies Section of the Initial Questionnaire" at Exhibit 2 p.25-26 (Aug. 19, 2019), CR 4-15 (PR 20-23). Similarly, Note 32(1) of Plantec's 2018 financial statement explains that POSCO "lost the controlling interests {in} the Company in accordance with the conclusion of workout agreement." Letter from Morris, Manning & Martin LLP, "POSCO's Remand Order Supplemental Questionnaire Response" at Exhibit 2 (Oct. 16, 2023), CRR 2-7 (PRR 4-7). In addition, because POSCO lost control and cannot be a parent company of Plantec, POSCO has to perform the following accounting treatment in accordance with Article 25 of K-IFRS 1110:

> (a) derecognize the assets and liabilities of the Plantec from POSCO's consolidated statement of financial position.
>
> (b) recognize any investment retained in Plantec at its fair value when control is lost and subsequently accounts for it and for any amounts owed by or to the former subsidiary in accordance with relevant IFRSs. That fair value shall be regarded as the fair value on initial recognition of a financial asset in accordance with IFRS 9 or, when appropriate, the cost on initial recognition of an investment in an associate or joint venture.
>
> (c) recognize the gain or loss associated with the loss of control attributable to the former controlling interest.

POSCO's NSA Response at 6-7.  These changes in POSCO's accounting treatment regarding Plantec further demonstrate POSCO's inability to control Plantec, as K-IFRS standards necessitate that POSCO must remove Plantec from its balance sheet, recognize any investment retained in Plantec at fair value, and recognize a gain or loss associated with the loss of control. All the foregoing record evidence makes clear that POSCO cannot "use or direct the individual assets" of Plantec in "essentially the same ways it can use its own assets" pursuant to 19 C.F.R. § 351.525(b)(6)(vi).

Unable to counter this substantial evidence, Nucor retorts that "Commerce's reasoning would effectively create a blanket exemption for any cross-owned affiliate participating in this type of subsidy program."  Nucor's Comments at 12.  However, Commerce explained that its "regulations make clear that the agency must look at the facts presented in each case in determining whether cross-ownership exists" and that "cross-ownership assessments are to be performed on a case-by-case basis and consistent with the facts on each record."  *Second Redetermination* at 20-21.  Here, Commerce's determination is based on this particular administrative record and is supported by the foregoing evidence that POSCO could not use or direct the assets of Plantec in essentially the same ways it can use its own assets.  The determination that POSCO did not control Plantec during the POR within the meaning of 19 C.F.R. § 351.525(b)(6)(vi), and thus Plantec was not cross-owned, is supported by substantial evidence.

### III.     Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that this Court affirm the *Second Redetermination* and for such other relief that the Court deems just and proper.

Respectfully submitted,

/s/ Brady W. Mills
Brady W. Mills
Donald B. Cameron
Julie C. Mendoza
R. Will Planert
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Ryan R. Migeed

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Ave, N.W., Suite 800
Washington, D.C. 20036
(202) 216-4116

*Counsel to POSCO*

**IV.     Certificate of Compliance.**

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 3,125 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Brady W. Mills  
Brady W. Mills