**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| NUCOR CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 21-00182 |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| POSCO, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's comments regarding the Department of Commerce's Final Results of Remand Redetermination Pursuant to Court Remand, dated December 19, 2023, ECF No. 93 (Second Remand Redetermination), defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's Second Remand Redetermination is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.

_____
CHIEF JUDGE

Dated: _____, 2024
  New York, NY

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| NUCOR CORPORATION, | ) |
| Plaintiff, | ) |
| v. | )     Court No. 21-00182 |
| UNITED STATES, | ) |
| Defendant, | )     **PUBLIC VERSION** |
| and | )     Confidential Information Removed from Pages 2 and 6 |
| POSCO, | ) |
| Defendant-Intervenor. | ) |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS**
**REGARDING THE SECOND REMAND REDETERMINATION**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

OF COUNSEL:
W. Mitch Purdy
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-5214
Fax: (202) 482-4912
Email: William.Purdy@trade.gov

ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369
Email: elizabeth.speck@usdoj.gov

February 20, 2024

Attorneys for Defendant, United States

## <u>TABLE OF CONTENTS</u>

BACKGROUND ..................................................................................................................2

I.       The Court's Second Remand Order.......................................................................2

II.      Commerce's Second Remand Redetermination ...................................................2

ARGUMENT ....................................................................................................................3

I.       Standard Of Review .............................................................................................3

II.      Commerce Lawfully Declined To Initiate An Investigation Because Nucor's Benefit
         Allegation Failed To Address Information That Was Reasonably Available To Nucor.....3

III.     Commerce's Determination That Plantec Was Not Cross-Owned During The POR Is
         Supported By Substantial Evidence And Complies With The Court's Remand Order.....10

         A.      Commerce Possessed The Discretion On Remand To Re-Consider Cross-
                 Ownership..........................................................................................................10

         B.      Nucor Failed To Administratively Exhaust The Issues Raised In Its   Brief........11

         C.      Substantial Evidence Supports Commerce's Conclusion That POSCO And
                 Plantec Were Not Cross-Owned Under 19 C.F.R. § 351.525(b)(6)(vi) ...............13

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*ABB, Inc. v. United States,*
  273 F. Supp. 3d 1186 (Ct. Int'l Trade 2017)
  *aff'd,* 920 F.3d 811 (Fed. Cir. 2019) ..................................................... 10

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
  33 C.I.T. 533 (2009) ...................................................................... 12

*Boomerang Tube LLC v. United States,*
  856 F.3d 908 (Fed. Cir. 2017) ............................................................ 11

*Corus Staal B.V. v. United States,*
  502 F.3d 1370 (Fed. Cir. 2007) ........................................................... 11

*Delverde, SrL v. United States,*
  202 F. 3d 1360 (Fed. Cir. 2000) ........................................................... 2

*Delverde, SrL v. United States,*
  989 F. Supp. 218 (Ct. Int'l Trade 1997) ............................................. 2, 4, 5

*Mittal Steel Point Lisas Ltd. v. United States,*
  548 F.3d 1375 (Fed. Cir. 2008) ........................................................ 12, 13

*Nucor Corp. v. United States,*
  827 F.3d  (Fed. Cir. 2019) ................................................................. 5

*POSCO v. United States,*
  No. 22-1525, 2023 WL 6969789 (Fed. Cir. Oct. 23, 2023) ................................ 5, 6

*Rhone Poulenc, Inc. v. United States,*
  899 F.2d 1185 (Fed. Cir. 1990) ........................................................... 11

*RZBC Group Shareholding Co., Ltd. v. United States,*
  100 F. Supp. 3d 1288 (Ct. Int'l Trade 2015) .............................................. 4

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................ 3

19 U.S.C. § 1671a ............................................................................ 4

28 U.S.C. § 2637(d) ......................................................................... 11

**Regulations**

19 C.F.R. § 351.202(b) .................................................................................................. 4

19 C.F.R. § 351.511(a) .................................................................................................. 5

19 C.F.R. § 351.525(b)(6) .................................................................................... *passim*

**Administrative Decisions**

*Certain Carbon and Alloy Steel Cut-to-Length Plate From the Republic of Korea*,
     86 Fed. Reg. 15,184 (Dep't of Commerce March 22, 2021)) ................................. 7, 8

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| NUCOR CORPORATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES, )<br>        Defendant, )<br><br>   and )<br><br>POSCO, )<br><br>      Defendant-Intervenor. )<br>  )| Court No. 21-00182<br><br>**PUBLIC VERSION**<br><br>Confidential Information Removed<br>from Pages 2 and 6 |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS**
**REGARDING THE SECOND REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by

plaintiff, Nucor Corporation (Nucor), ECF No. 96 (Nucor Cmts.), on the final remand

redetermination issued by the Department of Commerce pursuant to *Nucor Corporation v.*

*United States*, Court No. 21-00182, Slip Op. 23-119 (Ct. Int'l Trade Aug. 21, 2023) (Second

Remand Order), ECF No. 88. *See* Final Results of Remand Redetermination Pursuant to Court

Remand, dated December 19, 2023, ECF No. 93 (Second Remand Redetermination). As we

explain below, the Court should sustain Commerce's Second Remand Redetermination because

it is supported by substantial evidence and is otherwise in accordance with law.

BACKGROUND

I.    The Court's Second Remand Order

On August 2023, the Court issued the Second Remand Order, which required Commerce to provide additional analysis and explanation on two issues.  First, the Court ordered Commerce to articulate and apply a consistent standard for evaluating Nucor's contention that the Government of Korea's (GOK) provision of off-peak sale of electricity for less than adequate remuneration (LTAR) provided a benefit.  Second Remand Order, Court No. 21-00182, Slip Op. 23-119, at 12-13, 35.  As part of this analysis, the Court ordered Commerce to address certain information regarding the Korea Power Exchange's (KPX) pricing formula, which the Court found "appears to indicate that {Korea Electric Power Corporation's (KEPCO)} weighted-average off-peak prices paid by POSCO ███████████████ ] KEPCO's cost of acquiring electricity from its lowest cost generator."  *Id.* at 16.

Second, after finding that Commerce's prior explanation concerning cross-ownership was unsupported by substantial evidence, the Court ordered Commerce to "reconsider or further explain its determination not to treat {POSCO Plantec (Plantec)} as a cross-owned input supplier in connection with the supply of scrap and the converter vessel."  *Id.* at 22-35.

II.    Commerce's Second Remand Redetermination

In its Second Remand Redetermination, Commerce complied with the Court's order to reconsider the information on the record and further explain its decision.  First, Commerce clarified that, because "Nucor's allegation of off-peak electricity for LTAR is a distinct subset" of a program that Commerce had addressed in numerous other proceedings, in accordance with *Delverde, SrL v. United States*, 989 F. Supp. 218, 222 (Ct. Int'l Trade 1997), *vacated on other grounds by Delverde, SrL v. United States*, 202 F. 3d 1360 (Fed. Cir. 2000), Commerce

2

"require{d} more" in order to initiate an investigation. Specifically, Commerce required that Nucor address information that was reasonably available to it on the record from numerous prior proceedings. Second Remand Redetermination at 5-6. After analyzing the record information, Commerce continued to find that Nucor's off-peak electricity for LTAR new subsidy allegation (NSA) did not address or otherwise account for information reasonably available to Nucor. Thus, Commerce concluded that Nucor did not provide sufficient evidence of a benefit for Commerce to initiate on the allegation. *Id.* at 11-22, 28-30.

Second, Commerce concluded that it was necessary to apply 19 C.F.R § 351.525(b)(6)(iv) and (vi) to determine whether Plantec was cross-owned with POSCO. Based on Commerce's application of its regulations and the record evidence, Commerce determined that POSCO did not control Plantec during the period of review. Thus, Commerce concluded that Plantec was not cross-owned with POSCO and could not be considered a cross-owned input supplier under 19 C.F.R. § 351.525(b)(6)(iv).

<u>ARGUMENT</u>

I.     <u>Standard Of Review</u>

The Court sustains any determination, finding, or conclusion found by Commerce unless it is unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

II.    Commerce Lawfully Declined To Initiate An Investigation Because Nucor's Benefit
       <u>Allegation Failed To Address Information That Was Reasonably Available To Nucor</u>

Commerce complied with the Second Remand Order by articulating the standard for initiation, applying that standard to Nucor's NSA, and explaining why information that Nucor had provided failed to meet that standard. *See* Second Remand Redetermination at 15, 24-25. Citing *Delverde*, Commerce required Nucor to address information "reasonably available" to it

<p align="center">3</p>

from the numerous prior proceedings concerning the GOK's provision of electricity for LTAR. Second Remand Redetermination at 5-6, 9 (citing *Delverde*, 989 F. Supp. at 222).  Nucor agrees that Commerce can require a petitioner to address a wider subset of "reasonably available" information when Commerce has investigated a "subset of the same program."  Nucor Cmts. at 1-2.  Thus, Nucor does not dispute that Commerce complied with this aspect of the remand order.

Nucor contends that Commerce has failed to address the information that the Court identified in its Second Remand Order as potentially "responsive to Commerce's request" or otherwise identify what "reasonably available" information to which Nucor has failed to respond.  *Id.*; *see* Second Remand Order at 16.  To the contrary, as explained below, Commerce addressed the information that the Court identified and explained why that information did not satisfy the standard for initiation.

As Commerce explained, although Commerce has only one initiation standard, that standard requires more from a petitioner where, as here, Nucor's allegation concerning the provision of off-peak electricity for LTAR "is a distinct subset of a program Commerce has examined in earlier segments of this order and numerous other Korean CVR cases."   Second Remand Redetermination 6.  In order to satisfy the "easygoing" standard for initiat{ing} an investigation, a petitioner must: allege the elements necessary for the imposition of a countervailing duty as set forth in 19 U.S.C. § 1671a (*i.e.*, specificity, benefit, and financial contribution), but cannot "omit important facts which are reasonably available to the petitioner." *RZBC Group Shareholding Co., Ltd. v. United States*, 100 F. Supp. 3d 1288, 1295 (Ct. Int'l Trade 2015) (quoting H.R. No. 96-317 at 51 (1979); *see also* 19 C.F.R. § 351.202(b)(7)(ii)(B) (explaining what constitutes reasonably available information).

4

Because the "statute and legislative history are silent as to the initiation standard with regard to programs that previously have been found non-countervailable," Commerce may limit reinvestigations of certain facts. *Delverde*, 989 F. Supp. at 222. Thus, "{w}hen allegations concern a program previously held non-countervailable," Commerce can require more of an allegation. Second Remand Redeterminaion at 5. In the proceeding underlying *Delverde*, "Commerce analyzed the evidence presented in the petition and decided not to investigate because plaintiffs had not provided a sufficient basis to believe that the programs had changed." *Id*. Here, as in *Delverde*, there was more information reasonably available to Nucor, and Commerce considered all this information when declining to initiate an investigation.

Turning to what information was "reasonably available," as Commerce explained in the Second Remand Redetermination, although the subsidy alleged is new, it exists within the context of the overarching electricity system that Commerce has previously investigated several times. Second Remand Redetermination at 6-7. In those proceedings, in accordance with its tier-three benefit analysis under 19 C.F.R. § 351.511(a)(2)(iii), Commerce examined the GOK's overarching electricity system and concluded that Korea's electricity market was consistent with market principles, including a fair rate of return. Second Remand Redetermination at 24-25. These findings were upheld by the United States Court of Appeals for the Federal Circuit in *Nucor Corp. v. United States*, 827 F.3d 1243 (Fed. Cir. 2019), and *POSCO v. United States*, No. 22-1525, 2023 WL 6969789 (Fed. Cir. Oct. 23, 2023). Thus, Commerce expected Nucor to address the information supporting its prior finding that the Korean electricity system was consistent with market principles or otherwise demonstrate that the GOK's provision of electricity at "specific, off-peak hours was inconsistent with market principles." Second Remand Redetermination at 25.

Nucor contends that it provided information to allege the existence of a benefit, and that Commerce failed to address information showing that "KEPCO's weighted-average off-peak prices paid by POSCO [███████████] KEPCO's cost of acquiring electricity from its lowest cost generator." Nucor Cmts. at 4. This allegation relies upon Nucor's comparison between "(i) the per-kWh unit price that KEPCO reported paying its lowest cost generators during the POR, which is a variable cost not including any cost that KEPCO may incur in transmission and distribution; and (ii) the per-kWh unit price that POSCO reported paying KEPCO for off-peak electricity based on the tariff schedule that was in effect during the POR." Nucor Cmts. at 8.

Commerce found that Nucor's comparison was not a like comparison because the average price that Nucor used "is not off-peak specific." Second Remand Redetermination at 7 n.33. Instead, it "represents a "power trading price across all hours." Conversely, the POSCO price that Nucor used "represents {only} the variable component of what POSCO paid, failing to take into account all items, fixed and variable, that Commerce accounts for when establishing benchmarks." *Id.* Those other "items" have been thoroughly addressed in numerous prior investigations.

For the purposes of Nucor's NSA, Commerce required reasonable evidence that the industrial rates at off-peak hours were not based on market principles. Nucor needed to address Commerce's prior findings on the Korean electricity market that lay out the basic framework of the system and how prices are determined, including how the system marginal price (SMP) interacts with other aspects of the pricing formula. *See* Second Remand Redetermination at 9-10. Information regarding how the Korean electricity system is organized among generators, the system operator KPX, and the supplier, KEPCO; how the KPX and KEPCO set their prices and

6

tariffs; and KEPCO's pricing methodology and cost recovery data was all available on the record for Nucor to consider.  Second Remand Redetermination at 8-9 (citing GOK's Letter, "Response to the Initial Questionnaire" (Oct. 7, 2019) (GOK QR), C.D. 170-180, P.D. 60-70, at Exhs. E-3 to E-5).

 Here, Nucor's allegation focused solely on comparisons of the SMP and the annual average cost of sale for industrial electricity to POSCO's weighted average off-peak electricity prices during the POR.  Second Remand Redetermination at 11-12.  Nucor did not account for any of the other factors incorporated into the pricing of electricity in Korea that would be relevant to an evaluation of whether KEPCO recovered its costs on the provision of off-peak electricity.

For context, the SMP is the accepted bid price from the generation unit with the highest variable cost that receives a purchase order at any given hour (*i.e.*, the highest price at which electricity is supplied at any given time).  *See Certain Carbon and Alloy Steel Cut-to-Length Plate From the Republic of Korea*, 86 Fed. Reg. 15,184 (Dep't of Commerce March 22, 2021)) (final results and partial rescission of CVD admin. review) (P.R. 186), and accompanying Issues and Decision Memorandum (IDM) (P.D. 187) at 20.  The SMP is only one variable in the formula KEPCO uses to determine the market price paid to electricity generators.  Second Remand Redetermination at 12-13.  KEPCO primarily utilizes the SMP in conjunction with the adjusted coefficient factor and the capacity price to calculate amounts owed to electricity generators.  Memorandum re: Second Administrative Review of Countervailing Duty Order on Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea (Apr. 1, 2020) (NSA Memorandum), P.D. 144 at 8.  Thus, any cost-based, market benchmark for the provision of electricity should include these other factors, such as the adjusted coefficient, because under

Korea's system of electricity pricing, KEPCO's cost of electricity is based on that formula.
Second Remand Redetermination at 12; *see also* New Subsidy Allegations Supplemental
Questionnaire Response (Dec. 31, 2019) (Nucor NSA SQR), P.D. 94 at Exh. 1, pp. 38-40 and
44-47.

Nucor, however, did not meaningfully address this pricing structure, despite Commerce's
specific request.  Second Remand Redetermination at 12; Letter, "New Subsidy Allegation
Supplemental Questionnaire," (Dec. 20, 2019) (NSA Supplemental Questionnaire), P.D. 90 at 3.
Specifically, in the NSA Supplemental Questionnaire, Commerce asked Nucor:  "there are other
factors that determine the price for electricity other than the SMP.  Based on these factors, please
explain how the SMP only impacts pricing at off-peak times."  NSA Supplemental
Questionnaire, P.D. 89 at 3.

Although Nucor asserts otherwise, the information required to provide a sufficient
explanation was available through Commerce's prior analysis of the Korean electricity market
and was placed on the record by Nucor as a part of its allegation.  Nucor Cmts. at 3.  Commerce
explained that, in addition to other aspects of the Korean electricity system that Nucor failed to
address, Nucor did not explain how the SMP interacts with the pricing formula or various other
factors involved in the pricing of electricity, such as the adjusted coefficient, that KEPCO applies
to certain generators' prices prior to purchase.  Second Remand Redetermination at 10-15, 24-25.

As Commerce explained, information on how the KPX developed the SMP price and
how an adjusted coefficient was applied to certain generators' prices prior to the purchase by
KEPCO is on the record of numerous reviews and was on the record of this review within
KEPCO's SEC Form 20-F filing.  Second Remand Redetermination at 12; Nucor NSA SQR,
P.D. 94 at Exh. 1, pp. 38-40 and 44-47.  KEPCO's SEC Form 20-F refuted Nucor's allegation of

benefit based on the SMP because it demonstrates that other factors other than the SMP are incorporated into the pricing of electricity. *Id.*; Nucor NSA SQR, P.D. 94 at Exh. 1, pp. 38-40 and 44-47. The SEC Form 20-F also contains financial disclosures and electricity power trading statistics from KEPCO and its subsidiary generators and purchase information from unaffiliated suppliers. *Id.* All of this information directly contradicts Nucor's claims that the provision of off-peak electricity provides an alleged benefit despite Commerce's prior determination that the overarching electricity pricing was consistent with market principles.

Further, that Nucor's comparison of weighted-average off-peak prices paid by POSCO to KEPCO's cost of acquiring electricity from its lowest cost generator was not an equivalent comparison was evident from Commerce's established methodologies for determining benefit with respect to the overarching Korean electricity system. Second Remand Redetermination at 7. Contrary to Nucor's claims, Commerce never faulted Nucor for failing to provide data regarding KEPCO's off-peak electricity costs. *See* Nucor Cmts. at 5 (citing Second Remand Redetermination at 7 n.33; NSA Supplemental Questionnaire, P.D. 89 at 3). Nucor, however, failed to connect its reliance on the SMP to the remainder of the factors incorporated into the pricing formula that Commerce found insufficient. *See* Second Remand Redetermination at 7 n.33. Nucor's reliance on the SMP and average prices, without addressing the other factors incorporated into the pricing formula detailed in KEPCO's Form 20-F filing, rendered the benefit allegation insufficient as it did not address reasonably available information on the record concerning why the SMP prices were not a good proxy to demonstrate whether a benefit was conferred. *Id.* at 12-13.

Nucor's allegation did not provide any new information regarding the Korean electricity system that caused Commerce to reconsider whether the system was inconsistent with market

principles, nor did it explain how the provision of off-peak electricity was inconsistent with market principles despite the overarching system being consistent. *See* Second Remand Redetermination at 8-9. Thus, Commerce reasonably found that Nucor failed to adequately support its allegation with reference to all reasonably available information.

III.    Commerce's Determination That Plantec Was Not Cross-Owned During The POR Is Supported By Substantial Evidence And Complies With The Court's Remand Order

Commerce also complied with the Court's instruction to reconsider whether Plantec and POSCO are cross-owned affiliates. Second Remand Order at 34. As part of its analysis, Commerce examined whether POSCO and Plantec satisfied the cross-ownership standard set forth in 19 C.F.R. § 351.525(b)(6)(vi) and concluded that they were not cross-owned. Second Remand Redetermination at 18-22. Contrary to Nucor's assertions, Commerce's analysis complied with the Court's order, which ordered Commerce to "reconsider or further explain its decision not to treat Plantec as a cross-owned input supplier . . ." Second Remand Order at 36.

Nucor disagrees with Commerce's analysis, but this Court should decline to entertain those arguments because Nucor failed to raise these arguments before Commerce. Even if the Court reaches the merits of Nucor's claims, however, Nucor's arguments do not show that Commerce acted contrary to law.

A.    Commerce Possessed The Discretion On Remand To Re-Consider Cross-Ownership

First, Commerce's review of the record and subsequent finding that Plantec was not cross-owned was consistent with the Court's remand order. Nucor Cmts. at 9-10. "Unless specifically directed by the court, Commerce had broad discretion to fully consider the issues remanded." *ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (Ct. Int'l Trade 2017), *aff'd,* 920 F.3d 811 (Fed. Cir. 2019). Here, the Court directed Commerce to "reconsider or

further explain its determination not to treat Plantec as a cross-owned input supplier …"  Second Remand Order at 35-36.  As we explain below, Commerce complied with the remand order.

As Commerce explained, to attribute subsidies received by an input producer to a downstream producer, the input producer must satisfy both:  (1) the primarily dedicated standard of 19 C.F.R. § 351.525(b)(6)(iv) for the inputs it provides, and (2) the cross-ownership standard of 19 C.F.R. § 351.525(b)(6)(vi).  Second Remand Redetermination at 18.  Although Commerce had previously focused upon the first inquiry (whether Plantec's inputs were primarily dedicated to the downstream product),  in the Second Remand Redetermination, Commerce found it was necessary to resolve whether Plantec was cross-owned by POSCO, because without such a determination Commerce could not find that Plantec was a cross-owned input supplier.  Second Remand Redetermination at 18.  Examining the issue in this way fell within Commerce's broad discretion on remand.

B.    Nucor Failed To Administratively Exhaust The Issues Raised In Its Brief

In its remand comments, Nucor contends that Plantec and POSCO satisfy the standards for cross-ownership set forth in 19 C.F.R. § 351.525(b)(6)(vi) because Plantec was under POSCO's "control" during the POR.  Nucor Cmts. at 11-13.  Nucor, however, failed to develop these arguments before Commerce.  Because Nucor has failed to exhaust its administrative remedies, the Court should decline to address these arguments.

Congress has mandated that this Court "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations.  28 U.S.C. § 2637(d); *see Boomerang Tube, LLC v. United States*, 856 F.3d 908, 910 (Fed. Cir. 2017).  The failure to make a specific argument in a case brief, even if the general issue is addressed, constitutes a failure to exhaust administrative remedies.  *See Rhone Poulenc,*

*Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (holding that plaintiff's failure to raise

a particular argument before Commerce precluded judicial review even though plaintiff

characterized that argument as "simply another angle to an issue").  The failure specifically to

raise an issue is considered failure to exhaust remedies because it "deprives {Commerce} of an

opportunity to consider the matter, make its ruling, and state the reasons for its action."  *Ad Hoc

Shrimp Trade Action Comm. v. United States*, 33 C.I.T. 533, 545–46 (2009), *aff'd in part*, 596

F.3d 1365 (Fed. Cir. 2010).  This exhaustion requirement applies to remand proceedings.  *Mittal

Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008).

　　　Here, Nucor's comments on remand regarding the issue of cross-ownership consisted of

four sentences.  *See* Nucor Draft Remand Comments (Nov. 29, 2023), 2nd C.R.R. 3, 2nd P.R.R.

15, at 3.  Although Nucor alleged that POSCO owned a majority of Plantec's shares, Nucor

never presented any of the arguments it now raises regarding how POSCO maintained control

during the POR despite the loss of decision-making authority.  Nor did it develop or explain its

argument that POSCO lost control "by virtue of the very subsidy that was being alleged," or

otherwise address the mechanisms of the debt-restructuring program.  *Compare* Nucor Cmts. at

10-13, *with* Nucor Draft Remand Comments 2nd C.R.R. 3, at 2-3; *see also* Second Remand

Redetermination at 29 (noting that Nucor's abbreviated claim had failed to address record

evidence suggesting that another POSCO Plantec Creditor Financial Institutions Committee

(PPCFIC) held a majority interest in Plantec during the POR and had otherwise raised only

"cryptic{}" claims).  Because Nucor failed to exhaust these arguments, the Court should not

entertain them now.

C.    Substantial Evidence Supports Commerce's Conclusion That POSCO And
      Plantec Were Not Cross-Owned Under 19 C.F.R. § 351.525(b)(6)(vi)

Even assuming Nucor preserved these arguments, they do not show that Commerce's

remand redetermination is unsupported by substantial evidence or not in accordance with law.

Nucor fails to show how POSCO maintained control despite the impact of POSCO's

participation in Plantec's "debt workout program" or restructuring with its creditors.  Nucor

Cmts. at 11-13; Second Remand Redetermination at 20.  Cross-ownership exists where one

corporation "can use or direct the individual assets of the other corporation(s) in essential the

same ways it can use its own assets."  19 C.F.R. § 351.525(b)(6)(vi).  Although "normally" this

standard is satisfied by majority voting ownership, *id.*, that is not always the case.  Commerce's

regulations "make{s} clear" that cross-ownership analysis is done on a case-by-case basis, based

on the facts presented.  *Id.*; Second Remand Redetermination at 19-22.

As Commerce explained, through Plantec's debt workout program the PPCFIC was

created, which established the Agreement for Compliance of Business Normalization Plan that

governed Plantec during the POR.  Second Remand Redetermination at 20-21 (citing POSCO's

Letter, "Response to the Affiliated Companies Section of the Initial Questionnaire) (Aug. 19,

2019), C.D. 4-15, P.D. 20-23, at Exh. 2 and POSCO's Response to Nucor's NSA (Nov. 21,

2019, C.D 185, P.D. 88 at Attachment 1).  Under this agreement, POSCO lost "the right to,

among other things, call shareholder meetings, call board meetings, appoint or replace directors,

approve applications for recovery and bankruptcy procedures, dispose of property, approve new

financing and investment, approve mergers and acquisitions, and provide borrowing guarantees."

*Id.*  Further, Plantec's financial statements state that, as a result of the debt workout program,

POSCO "lost the controlling interests on the company."  POSCO's Remand Order Supplemental

Questionnaire Response (Oct. 16, 2023), 2nd C.R.R. 2-7, 2nd P.R.R. 4-7, at Exh. 2.  This

supports that during the relevant time period POSCO did not have the ability to control Plantec's assets as its own.  19 C.F.R. § 351.525(b)(6)(vi).

POSCO's ownership of a majority of Plantec's shares is not sufficient to find cross-ownership, as Nucor contends.  Nucor Cmts. at 11-12.  Section 351.525(b)(6)(vi) focuses upon whether POSCO can "use and direct the individual assets" of Plantec in essentially the same ways it can use its own assets.  Second Remand Redetermination at 18, 28.  As Commerce explained, majority ownership does not always demonstrate cross-ownership.  Second Remand Redetermination at 21-22.  And as discussed above, the record establishes that another party – PPCFIC – and not POSCO, controlled Plantec during the relevant POR.  *Id.*  Thus, Commerce concluded that it could not ignore those record facts.  Because POSCO and Plantec were not cross-owned during the POR for purposes of 19 C.F.R. § 351.525(b)(6)(vi), any subsidies that Plantec may have received cannot be attributed to POSCO under that regulation, even if Plantec's inputs were primarily dedicated to the production of the downstream product.

In sum, Commerce's finding that Plantec was not cross-owned with POSCO during the POR is supported by substantial evidence and in accordance with law.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's Second Remand Redetermination and enter judgment for the United States.

<div style="margin-left:40%">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

</div>

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:
W. Mitch Purdy
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
   Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-5214
Fax: (202) 482-4912
Email: William.Purdy@trade.gov

/s/ Elizabeth A. Speck
ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369
Email: elizabeth.speck@usdoj.gov

February 20, 2024

Attorneys for Defendant, United States

15

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 3,824 words.

<u>/s/ Elizabeth Speck</u>

February 20, 2024