**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**NUCOR CORPORATION,**
**Plaintiff,**
**v.**
**UNITED STATES,**
**Defendant,**
**and**
**POSCO,**
**Defendant-Intervenor.**

**Before: Hon. Mark A. Barnett, Chief Judge**

**Court No. 21-00182**

**NUCOR CORPORATION'S COMMENTS IN OPPOSITION TO THIRD REMAND RESULTS**

**Alan H. Price, Esq.**
**Christopher B. Weld, Esq.**
**Maureen E. Thorson, Esq.**
**Adam M. Teslik, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel to Nucor Corporation***

**Dated: September 30, 2024**

## I. INTRODUCTION

On behalf of Nucor Corporation ("Nucor"), we respectfully submit these comments on the U.S. Department of Commerce's ("Commerce") Third Remand Redetermination regarding the administrative review of the countervailing duty order on cut-to-length steel plate from the Republic of Korea. Final Results of Redetermination Pursuant to Ct. Remand Order in *Nucor Corp. v. United States*, Ct. No. 21-00182 (Aug. 15, 2024), ECF No. 112 ("Third Remand Redeter."). For the reasons discussed below, Nucor respectfully submits that the Third Remand Redetermination remains unlawful and unsupported by the record.

## II. ARGUMENT

The Court remanded for Commerce to address a specific piece of information that supported Nucor's allegation regarding the provision of off-peak electricity for LTAR and that undermined the justifications that Commerce has thus far adduced for rejecting it. *Nucor Corp. v. United States*, slip. op. 24-49 (Ct. Int'l Trade Apr. 19, 2024) at 9-14 ("Slip Op. 24-49"), ECF No. 104. Highlighting Commerce's assertion that the allegation "required a reasonable proxy for determining what the prices KEPCO paid might be at the specific point of off-peak hours," the Court held that Commerce had not adequately addressed evidence that the prices KEPCO charged to POSCO were lower than KEPCO's cost of acquiring electricity from the lowest-cost generator. *Id*. at 10. The Court noted that this comparison was presented in the context of other evidence suggesting minimal fluctuations in KEPCO's cost of acquisition during peak, mid-peak, and off-peak times of day, both overall and from any individual generator. *Id*. at 11.

The Court remanded for further explanation because Commerce's previous attempt to address it was "conclusory and confusing" and "summarily dismissed this information as 'not off-

peak specific' and 'instead representing a power trading price across all hours'" without establishing that "off-peak specific" data were reasonably available to Nucor. *Id*. at 12.

Commerce's third attempt to address the Court's concerns likewise fails. Rather than engaging with the issues emphasized in the Court's opinion, the agency focuses its Third Remand Redetermination on a confusing argument suggesting that Nucor's allegation was not viable under the tier three adequate remuneration legal standard and agency practice. Where it does attempt to address the evidence that the Court emphasized, it fails to reference any record information that undermines the allegation and attempts to deflect the question altogether with unfounded arguments about timeliness.

**A. <u>The Third Remand Redetermination Fails to Articulate a Clear and Consistent Legal Standard</u>**

The statute provides that a government's or public entity's provision of a good or service to an industry or enterprise confers a benefit when they "are provided for less than adequate remuneration . . . ." 19 U.S.C. § 1677(5)(E)(iv). While this benefit analysis is to be conducted "in relation to prevailing market conditions for the good or service being provided," *Id*., this qualification "does not define {adequate remuneration} . . . but rather simply directs the Department to examine the prevailing market conditions in determining adequacy." Issues and Decision Memorandum accompanying *Citric Acid and Certain Citrate Salts from the People's Republic of China*, 79 Fed. Reg. 78,799 (Dep't Commerce Dec. 31, 2014) (final results of countervailing duty admin. rev.; 2012) at 84 ("Citric Acid IDM").

Where there are no domestic or world market prices available, Commerce "assess{es} whether the government price is consistent with market principles" in a "tier-three" analysis. 19 C.F.R. § 351.511(a)(2)(iii). The Federal Circuit has tied the concept of adequate remuneration remains to "fair value," finding that "consistently low prices that no market participant could

sustain" could not reasonably be considered consistent with market principles. *Nucor Corp. v. United States*, 927 F.3d 1243, 1251 (Fed. Cir. 2019). *See also POSCO v. United States*, 977 F.3d 1369 (Fed. Cir. 2020). In *Nucor*, the Federal Circuit held that Commerce may lawfully determine that a price covering the cost of production and profit is consistent with market principles. *Nucor*, 927 F.3d at 1254-55. Commerce has since explained that its tier-three analysis of electricity prices considers whether "the tariff charged to the respondent covers 'cost of production' plus 'a profitable return on the investment . . . .'" *See, e.g.*, Issues and Decision Memorandum accompanying *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea*, 87 Fed. Reg. 6,842 (Dep't Commerce Feb. 7, 2022) (final results and partial recission of countervailing duty admin. rev.; 2019) at 23.

This is precisely the legal framework in which Nucor presented its new subsidy allegation. Nucor alleged that, notwithstanding KEPCO's "time-of-use" ("TOU") pricing system, certain prices within that system – *i.e.*, off-peak prices – are subsidized prices because they are significantly below the government supplier's cost of supplying off-peak electricity. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: New Subsidy Allegations* (Nov. 4, 2019) at 8-10 ("Nucor NSA"), C.R. 182-184, P.R. 76-78.

Commerce's prior attempts to reject the allegation have relied primarily on Nucor's purported failure to provide "off-peak-specific" KEPCO cost data that is not available in the public domain, and on sweeping references to a universe unspecified information that purportedly undermines the evidence that Nucor provided. *See, e.g.*, Slip Op. 24-49 at 11 (noting that "Commerce summarily dismissed this information as 'not off-peak specific'); Final Results of Redetermination Pursuant to Ct. Remand Order in *Nucor Corp. v. United States*, Ct. No. 21-00182

(Dec. 19, 2023) at 7-8, ECF No. 93 (generally referencing "the well-known parameters of the Korean electricity system").

In the Third Remand Redetermination, the agency shifts focus to what characterizes, "{i}n hindsight," as "the key reason that Nucor's NSA ultimately fails." Third Remand Redeter. at 13. This "key reason" is that "Nucor failed to provide sufficient information that an examination of off-peak electricity in isolation of the entire market-based tariff schedule would be consistent with the prevailing market conditions for electricity provision in Korea as required under {19 U.S.C. § 1677(5)(E)}." *Id*. Commerce asserts that, to do this, "Nucor was required to provide sufficient information to demonstrate KEPCO's operations are outside of 'prevailing market conditions'" for electricity in Korea. *Id*.

As a preliminary matter, there is no basis in the statute, the rules, or agency practice for treating adequacy of remuneration in terms of some degree of consistency with or presence within or outside of the "prevailing market conditions" in the country under consideration. The agency's regulation references consistency with "market principles," not "prevailing market conditions." 19 C.F.R. § 351.511(a)(2)(iii). The Federal Circuit in *Nucor* tied the adequacy of remuneration to "fair value," explaining that the language "in relation to market conditions" in the statute supported "no different conclusion" in the tier three context. *Nucor*, 927 F.3d at 1251, 1253-54. Commerce itself has rejected attempts to define "adequate remuneration" in terms of the "prevailing market conditions" in the country under consideration. Citric Acid IDM at 84. And the agency's practice after *Nucor* has consistently relied on a cost-plus-profit standard.

In addition to having no sound basis in the statute, rules, or agency practice, it is circular and unreasonable to require Nucor to establish that an allegedly subsidized price charged by KEPCO is somehow "outside of" or "inconsistent with" the prevailing conditions in the Korean

electricity market. As Nucor has previously argued, because KEPCO is the sole electric utility in Korea, KEPCO and its subsidiaries are the prevailing market conditions in Korea. Nucor Opening Br. (Sept. 20, 2021), at 33-34, ECF No. 22. There is thus no information that Nucor could have possibly produced to establish that KEPCO's operations are "outside of" the prevailing market conditions. In its first remand order, this Court likewise questioned Commerce's reasoning because it "appears to fault Nucor for failing to demonstrate that KEPCO's prices were inconsistent with KEPCO's own tariff schedule. *Nucor Corp. v. United States*, slip op. 22-116 (Ct. Int'l Trade Oct. 12 2022) at 14, ECF No. 57.

The only "reasonably available information" the agency cites in this respect is the standard that it applied in prior determinations and the Federal Circuit's holding in *Nucor*. Third Remand Redeter. at 17-19, 32-33. These are sources of law, not information about the operation of the Korean electricity market. Regardless, not only did Nucor address these sources of "reasonably available information," they were the starting point of the allegation. Nucor NSA at 7-10 (alleging that off-peak prices in KEPCO's TOU system are for less than adequate remuneration as defined in *Nucor*, notwithstanding any appearance of aggregate cost recovery in prior determinations).

The Third Remand Redetermination suggests that the agency's actual problem with Nucor's allegation were not evidentiary at all, but rather were tied to the agency's refusal to consider whether individual prices in a TOU system may be subsidized prices, "in isolation of the overarching tariff schedule . . . ." Third Remand Redeter. at 13. According to the agency, off-peak prices are irrelevant independently, unless and until a party establishes that a TOU system is "outside of 'prevailing market conditions'" such that "it could be appropriate to examine the off-peak electricity rate in isolation . . . ." *Id.* Here, Commerce found that it would not separately examine off-peak prices because it had previously determined that "the aggregated-costs

methodology used by KEPCO to determine its electricity tariff schedule . . . is consistent with market principles because the resultant electricity tariff schedule is designed to generate aggregated-yearly revenue to cover KEPCO's costs plus a rate of return to ensure future operations." *Id*. at 17.

The logical conclusion of this is that the agency will not examine individual prices in a TOU system when the broader tariff schedule, in the aggregate, "is designed to generate {annual} revenue {sufficient} to cover {the government supplier's} costs plus a return to ensure future operations." *Id*. at 17-18. This Court has previously observed that Commerce has "suggest{ed} some reluctance . . . to examine time-period specific pricing," but that "instead of providing further explanation in this regard, Commerce . . . faulted Nucor failing to address certain reasonably available information . . . ." *Nucor Corp v. United States*, slip op. 23-119 (Ct Int'l Trade Aug. 21, 2023) at 15, ECF No. 88.

The Third Remand Redetermination suffers from the very same flaw. Instead of simply acknowledging the reality of its own reasoning, Commerce retreats behind vague assertions about the sufficiency of the information that Nucor provided in the allegation. In response to Nucor's comments, the agency asserted that "the recovery of aggregated costs plus a sufficient rate of return to ensure future operations is Commerce's established standard for cost recovery in the Korean electricity market . . . ." Third Draft Remand Redeter. at 39. But it added that "it does not follow that such a standard necessarily indicates that no individual prices paid in the TOU system can be subsidized prices." *Id*. at 39-40. Nucor, according to Commerce, was simply required to "provide an explanation of why the off-peak electricity prices in {KEPCO's} tariff schedule should be considered inconsistent with market principles." *Id*. at 40.

But the Court has already held on three separate occasions that the allegation did appear to provide sufficient evidence and explanation to overcome the low threshold for initiation, and that Commerce's stated grounds for rejecting the allegation were insufficient. *See, e.g.*, Slip Op. 24-49 at 10-13. Commerce's attempt to shift focus to unspecified "reasonably available information" related to whether KEPCO's off-peak prices are "outside of the prevailing market conditions" in Korea leaves Nucor with effectively no way to address the agency's concerns. Its equivocal articulation of an "aggregate cost" standard for tier-three analyses gives no clear sense of whether or when the agency might believe that examining individual prices within a broader TOU system could ever be viable. The tier three methodology with which Commerce considered the allegation is thus insufficiently explained and warrants remand for clarification or initiation of the allegation.

### B. The Third Remand Redetermination Fails to Address Key Information

Commerce's attempt to address the information highlighted in the Court's opinion relies heavily on unfounded timeliness arguments. Commerce suggests that it never needed to address the evidence at all because it was somehow untimely. The agency claims that it

> did not contest, nor do we currently make a determination regarding, the potential viability of Nucor's argument regarding {the nuclear generator KHNP} in the Third Draft Remand Redetermination. Rather, we noted that the citation to KHNP provided a different form of comparison to the prices paid by POSCO than the timely filed allegation . . . and we found . . . that the untimeliness of the argument was such that Commerce did not have an obligation to consider it . . . . Nucor does not contest that it first provided the information regarding KHNP after the allegation was rejected . . . .

Third Draft Remand Redetermination at 48-49. *See also id*. at 54 ("Nucor referenced the KHNP power trading statistics, but Commerce considered this allegation untimely . . . .").

But Nucor does contest this. Nucor timely provided the information in response to Commerce's supplemental questionnaire. *See* Letter from Wiley Rein to Sec'y Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: New Subsidy*

*Allegations Supplemental Questionnaire Response* (Dec. 31, 2019) at Exhibit 1, P.R. 94. The agency is correct that Nucor did not initially attempt to make its allegation based on KEPCO's lowest-cost generator because the information available to Nucor established that KEPCO does not rely solely on its lowest cost generator during off-peak hours. Slip Op. 24-49 at 10-12. Using it as KEPCO's actual cost of off-peak acquisition is the inference most adverse to the allegation. Nucor highlighted it only in response to Commerce's unreasonable rejection of the allegation for failing to include off-peak-specific cost information that is not available in the public domain. *Id.* at 11-12. *See also* Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Carbon and Alloy Steel Cut-to-Length Plate from the Republic of Korea: Request for Reconsideration of New Subsidy Allegation* (Apr. 9, 2020) at 7-8, C.R. 254, P.R. 148 (establishing that "{t}he Department's conclusion is thus unsupported by substantial evidence even assuming that the lowest-cost generator supplied 100% of off-peak electricity," which it did not).

That does not implicate the timeliness of Nucor's allegation. It confirms Commerce's error in rejecting it. In responding to Nucor's comments on this point, the agency suggests that KEPCO's lowest cost generator does not reflect KEPCO's lowest possible cost of acquisition because (i) it is an average price and thus "by definition, fifty percent of the prices KEPCO paid to KHNP are below" it, and (ii) "Commerce concluded that Nucor has yet to successfully substantiate" that KEPCO's cost of acquisition is consistent throughout day. Third Remand Redeter. at 52.

On the first point, the agency appears to have confused median and mean. Otherwise, there is no actual evidence to support the presumption. On the second point, counsel for Nucor understands Commerce's previous conclusions. Nucor has challenged those conclusions before this Court. And this Court has remanded precisely because Nucor did establish that KEPCO's cost

of acquisition from nuclear generators does not vary significantly throughout the day. Slip Op. 24-49 at 12.

The Third Remand Redetermination also suggests that Nucor's comparison omits a "demand charge" component that must be included in the price that POSCO pays. *Id.* at 24, 50-51. But Commerce fails to explain how the two price components can be reconciled, how any adjustment should be made, or whether it would affect the comparison even if it were possible. As Nucor pointed out to Commerce, the "demand charge" is a static, once-monthly, per-kilowatt charge, while Nucor's comparison was based on per-kilowatt-hour charges paid for every unit of electricity consumed. Letter from Wiley Rein LLP to Sec'y Commerce, re: *Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea: Comments on Draft Remand Results* (Nov. 23, 2024) at 9-10, P.R. 15. It is unclear whether the once-monthly, per-kilowatt "demand charge" has anything to with KEPCO's cost of acquisition at all, let alone whether a per-kilowatt charge could be reasonably allocated to per-kilowatt-hour prices to achieve the comparison that Commerce purports to require.

The fact that the agency, at the initiation stage, has seized upon potential calculation issues at this level of granularity and uncertainty reveals the flaws in its approach to the question before it. Commerce suggests that it "does not have an obligation to accept an allegation at face value and find undermining evidence to disprove it in order to not initiate on the allegation." Third Remand Redeter. at 53. *See also id.* at 55. But that is precisely what the agency is obligated to do in considering allegations. It must initiate "unless the allegations are clearly frivolous, not reasonably supported by the facts alleged or . . . omit important facts which are reasonably available to the petitioner." *RZBC Group*, 100 F.Supp.3d at 1296. In other words, if the allegation

establishes that the subsidy likely exists, and the agency cannot point to any reasonably available evidence to the contrary, then it must initiate.

In in its original determination and in three separate, lengthy remand redeterminations, Commerce has scoured the universe of available information in search of a justification to decline initiation. It has attempted to explain and reexplain every conceivable rationale for doing so. Its first three attempts were unsuccessful, and Nucor respectfully submits that its fourth attempt has failed as well.

## III. CONCLUSION

Nucor therefore respectfully requests that the Court find Commerce's Third Remand Redetermination unlawful and unsupported by the record.

**Ct. No. 21-00182**

CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Amended Opinion and Order (Aug. 15, 2024), ECF No. 112, the undersigned certifies that these comments comply with the word limitation requirement. The word count for Nucor Corporation's Comments in Opposition to Third Remand Results, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,903 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

September 30, 2024
(Date)