**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

|  |  |
|---|---|
| NUCOR CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) Court No. 21-00182 |
| Defendant, | ) |
| and | ) |
| POSCO, | ) |
| Defendant-Intervenor. | ) |

<u>**ORDER**</u>

Upon consideration of plaintiff's comments regarding the Department of Commerce's (Commerce) Final Results of Remand Redetermination Pursuant to Court Remand, dated September 30, 2024, ECF No. 116 (Third Remand Redetermination), defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that Commerce's Third Remand Redetermination is sustained in all respects; and it is further

ORDERED that judgment will enter in favor of the United States.

_____
CHIEF JUDGE

Dated: _____, 2024
  New York, NY

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| NUCOR CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) Court No. 21-00182 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| POSCO, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS REGARDING THE THIRD REMAND REDETERMINATION**

OF COUNSEL:
W. Mitch Purdy
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-5214
Fax: (202) 482-4912
Email: William.Purdy@trade.gov

October 18, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

ELIZABETH A. SPECK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 307-0369
Email: elizabeth.speck@usdoj.gov

Attorneys for Defendant, United States

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................2

    I.      The Court's Order ..................................................................................................2

    II.     Commerce's Third Remand Redetermination .....................................................2

ARGUMENT ......................................................................................................................4

    I.      Standard Of Review ..............................................................................................4

    II.     Commerce Applied The Correct Legal Standard When Considering Adequacy Of Remuneration For Initiation Purposes ...................................................................4

    III.    Commerce's Was Not Required To Initiate On An Untimely New Allegation Of Benefit ...................................................................................................................9

CONCLUSION ..................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*MacLean-Fogg v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ............................................................................. 4

*Nucor Corp. v. United States*,
  698 F. Supp. 3d 1310 (Ct. Int'l Trade 2024) ..................................................................... *passim.*

*Nucor Corp. v. United States*,
  286 F. Supp. 3d 1364 (Ct. Int'l Trade 2018) ............................................................................. 6

*Nucor Corp. v. United States*,
  927 F.3d 1243 (Fed. Cir. 2019) ................................................................................................. 6

*POSCO v. United States*,
  No. 22-1525, 2023 WL 6969789 (Fed. Cir. Oct. 23, 2023) ....................................................... 8

*RZBC Group Shareholding Co., Ltd. v. United States*,
  100 F. Supp. 3d 1288 (Ct. Int'l Trade 2015) .................................................................... 2, 9, 10

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ........................................................................................................ 4

19 U.S.C. § 16777(5)(E)(iv) ................................................................................................. 4, 6, 9

19 U.S.C. § 1671a ..................................................................................................................... 5, 9

**Regulations**

19 C.F.R. § 351.511(a) .................................................................................................................. 4

19 C.F.R. § 351.302(c)(2)(iv)(B) ................................................................................................ 10

**Administrative Decisions**

*Citric Acid and Certain Citrate Salts from the People's Republic of China*,
　79 Fed. Reg. 78,799 (Dep't of Commerce Dec. 31, 2014) ......................................................... 5

*Corrosion-Resistant Steel Products from the People's Republic of Korea*,
　80 Fed. Reg. 68,842 (Dep't of Commerce Nov. 6, 2015) ........................................................... 8

*Corrosion-Resistant Steel Products from the People's Republic of Korea*,
　81 Fed. Reg. 35,310 (Dep't of Commerce June 2, 2016) ........................................................... 9

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

|  |  |
|---|---|
| NUCOR CORPORATION, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) Court No. 21-00182 |
| Defendant, | ) |
| and | ) |
| POSCO, | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS REGARDING THE THIRD REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments filed by plaintiff, Nucor Corporation (Nucor), ECF No. 116 (Nucor Cmts.), on the final remand redetermination issued by the Department of Commerce (Commerce) pursuant to *Nucor Corporation v. United States*, 698 F. Supp. 3d 1310 (Ct. Int'l Trade 2024) (Third Remand Order). *See* Final Results of Remand Redetermination Pursuant to Court Remand, Aug. 15, 2024, ECF No. 112 (Third Remand Redetermination). For the reasons discussed below, we respectfully request that the Court sustain Commerce's Third Remand Redetermination because it complies with the Third Remand Order, is supported by substantial evidence, and is otherwise in accordance with law.

**BACKGROUND**

I. **The Court's Order**

In its Third Remand Order, the Court remanded Commerce's decision not to initiate on Nucor's New Subsidy Allegation {NSA} of off-peak electricity for less than adequate remuneration (LTAR). *See* Third Remand Order, 698 F. Supp. 3d at 1320. In its decision, the Court referenced its holding in its Second Remand Order, in which it held that Commerce had failed "to address evidence concerning differences between {Korea Electric Power Corporation's (KEPCO)} off-peak prices and KEPCO's cost of acquiring electricity from the lowest-cost generator, Korea Hydro and Nuclear Power Company Ltd. (KHNP), or explain why such information constituted insufficient evidence of a benefit … pursuant to the low standard of {*RZBC Group Shareholding Co., Ltd, et al. v. United States*, 100 F. Supp. 3d 1288 (Ct. Int'l Trade 2015)}." *Id.* at 1314 (cleaned up). The Court stated that in the Second Remand Results, Commerce had failed to address this evidence and explain how such information was insufficient evidence under the *RZBC Group* standard. Thus, the Court remanded for Commerce to further explain or reconsider its decision not to conduct an investigation." *Id.*

II. **Commerce's Third Remand Redetermination**

In its Third Remand Redetermination, Commerce complied with the Court's order to reconsider the record evidence and further explain its decision. Commerce explained that the statute requires the petitioners to allege the elements necessary for a potential subsidy, including that a benefit is conferred, and to support the allegation with information that is reasonably available. Third Remand Redetermination at 8. Commerce then examines the accuracy and adequacy of the petitioner's evidence supporting the allegation. *Id.* at 8-9. Commerce explained that Nucor's allegation did not provide an adequate allegation of benefit because

2

Nucor had failed to support its allegation that an examination of off-peak electricity in isolation would be consistent with the prevailing market conditions for the provision of electricity in Korea. *Id.* at 12. Commerce found that Nucor had failed to show that a benefit based solely on off-peak pricing would adequately consider prevailing market conditions in Korea, which utilizes a time of usage system that supplies electricity consistently throughout a 24-hour period and recovers costs on an aggregate basis to the extent necessary to ensure future operations. *Id.* at 13 (citing NSA Memorandum, Apr. 1, 2020, P.R. 144 at 9). Commerce explained that KEPCO designs its electricity tariff system by calculating its overall aggregated costs, including an amount for profit, to ensure aggregated revenue across all hours will recover its costs and provide an annual investment return. Third Remand Redetermination at 17. By ignoring the overarching design of the electricity system in making its allegation, Commerce found that Nucor's allegation was inconsistent with Commerce's prior analysis of known factors in the Korea electricity system that were included in the pricing of electricity beyond the system marginal price (SMP), as demonstrated by Nucor's own allegation. *Id.* at 19-20 (citing NSA Memorandum, P.R. 144 at 9; New Subsidy Allegations (Nov. 4, 2019) (NSA), P.R. 76-78, C.R. 182-184 at 7; Nucor New Subsidy Allegations Supplemental Questionnaire Response (Dec. 31, 2019) (NSA SQR), P.R. 94 at Exh. 1, pp. 31, 53-57).

  Commerce further found that Nucor's Reconsideration Request, which presented a new allegation of benefit distinct from the theory of benefit alleged in its NSA, could not be a basis for initiation. *Id.* at 21-23 (citing Nucor Request for Reconsideration of NSA (Aug. 9, 2020) (Request for Reconsideration), P.R. 146, C.R. 254, at 7-8; NSA Memorandum, P.R. 144 at 6-7; NSA, C.R. 182-184 at 8-15, and Exh. 7). Because the Reconsideration Request contained a new allegation of benefit that was submitted after the deadline for both a new subsidy allegation and

3

responses to Commerce's supplemental questionnaires regarding Nucor's NSA, Commerce found that this new allegation was untimely. *Id.* at 25-28 (citing NSA, C.R. 182-184 at 7, Exhs. 4 & 6; Request for Reconsideration, C.R. 254, at 7-8; NSA Extension Letter (Oct. 28, 2019), P.R. 74; NSA Memorandum, P.R. 144 at 7-9; NSA Supp. QR, P.R. 94 at 4-5). Thus, Commerce continued to find that Nucor had failed adequately to allege a benefit for the provision of off-peak electricity for less than adequate remuneration and declined to initiate an investigation.

## ARGUMENT

**I.      Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order, are supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

**II.     Commerce Applied The Correct Legal Standard When Considering Adequacy Of Remuneration For Initiation Purposes**

Section 1677(5)(E)(iv) of title 19 states that, when determining benefit based on a less than adequate remuneration standard, adequacy of remuneration "shall be determined in relation to the prevailing market conditions for the good or service being provided." Further, when there are no in-country market-determined prices or world market prices available, Commerce measures the adequacy of remuneration by assessing whether the government price is "consistent with market principles" under 19 C.F.R. § 351.511(a)(2)(iii). This is called a tier-three analysis. *See* Third Remand Redetermination at 36. Commerce's tier-three analysis does not override or supplant the statutory language requiring Commerce to consider prevailing market conditions. Instead, Commerce's regulations define adequate remuneration explicitly within the context of the statute. *Id.* (citing 19 U.S.C. § 1677(5)(E)(iv) and 19 C.F.R. § 351.511(a)(2)(iii)). Thus,

4

when reviewing a new subsidy allegation for a program related to the provision of a good for less than adequate remuneration in a tier-three scenario, under 19 U.S.C. § 1671a, Commerce must determine whether the petitioner has alleged the government's provision of a good is "inconsistent with market principles" while also considering prevailing market conditions. *Id.*

Nucor contends, without any support from the statute or Commerce's regulations, that the requirements of § 1677(5)(E)(iv) are merely guidelines that Commerce must follow in analyzing adequacy of remuneration and should not be a primary focus of Commerce's analysis. Nucor's Cmts. at 4-5. In support of its position, Nucor cites but a single determination, which concerned whether, in conducting a tier two, world market price adequacy of remuneration analysis, Commerce should average world market prices. *See Citric Acid and Certain Citrate Salts from the People's Republic of China*, 79 Fed. Reg. 78,799 (Dep't Commerce Dec. 31, 2014) (final results), and accompanying IDM at 84 (Citric Acid from China). This decision, which Nucor relies on to support an argument that there is "no basis in the statute, the rules, or agency practice for treating the adequacy of remuneration in terms of some degree of consistency with or presence within or outside 'prevailing market conditions,'" says nothing about Commerce's tier-three analysis, nor does it state that consideration of consistency with prevailing market conditions in a tier-three analysis is inappropriate or contrary to law. *See* Nucor's Cmts. at 5; Citric Acid from China IDM at 84. Instead, it states only that averaging world market prices is consistent with prevailing market conditions in a tier-two, world market price context. *See* Citric Acid from China IDM at 84.

In addition, contrary to Nucor's assertions, Commerce did not misinterpret its regulations when it analyzed whether KEPCO's pricing was "consistent with prevailing market conditions in Korea. Nucor Cmts. at 5. Nucor's interpretation negates the statutory requirement that

5

Commerce "shall" take prevailing market conditions into account when determining adequacy of remuneration. *See* 19 U.S.C. § 1677(5)(E)(iv). Commerce's analysis of whether a benefit is received for less than adequate remuneration must evaluate whether the allegation supports that a good is not being provided in a manner "consistent with market principles" within the context of prevailing market conditions. *Id.* Nucor's argument that these two concepts are distinct, and therefore, that Commerce should have ignored the overarching context of the Korean electricity system's design when reviewing its allegation, is illogical. Rather, as Commerce explained, "the statute and the regulations explicitly direct Commerce to consider the circumstances in which the government provides the good or service in a tier-three analysis." Third Remand Redetermination at 36.

As this Court has recognized, "{t}he statute sets a standard of adequate remuneration, and the regulation explicates that standard in a variety of contexts." *See Nucor Corp. v. United States*, 286 F. Supp. 3d 1364, 1371 (Ct. Int'l Trade 2018), *aff'd* 927 F.3d 1243 (Fed. Cir. 2019). Thus, Commerce applied its regulations in a manner consistent with the statute by "considering the context of prevailing market conditions" as determined in other proceedings in which the Commerce and the Federal Circuit agreed that the tariff schedule was set in accordance with market principles. Third Remand Redetermination at 37. For Commerce to initiate on a subsidy allegation that involves a portion of a tariff schedule Commerce has already determined necessitates a tier three analysis, the allegation must consider how the overarching electricity system in Korea is designed. Thus, both a consideration of prevailing market conditions, and an analysis of whether a government's provision of a good is consistent with market principles, would require Commerce to consider how the overarching electricity system in Korea is designed. Third Remand Redetermination at 36-39.

Nucor wrongly contends that the "logical conclusion of {Commerce's analysis} is that the agency will not examine individual prices in a time of use system when the broader tariff schedule, in the aggregate, is designed to generate annual revenue sufficient to cover the government supplier's costs plus a return to ensure future operations." Nucor Cmts. at 7 (cleaned up). As Commerce explained, however, a benefit allegation "should provide an explanation of why the off-peak electricity prices" in the tariff schedule should be considered inconsistent with market principles. Third Remand Redetermination at 40. The only basis for Nucor 's benefit allegation in its NSA was the presumption that, in not recovering costs at off-peak hours, KEPCO necessarily was subsidizing the purchase of electricity. *Id.* In making this allegation, Nucor conflated cost recovery under a tier-three analysis with Commerce's transaction-specific analysis for market price under a tier-one or tier-two analysis.

It is evident that Nucor is conflating the two concepts because it relies solely on a comparison of the KPX's SMP to KEPCO's tariff rates at off-peak hours, which attempts to make a price-to-price comparison using only a portion of the price paid by POSCO to tariff rates. Third Remand Redetermination at 47 (citing NSA, C.R. 182-184, at 9-10). Nucor argued that this comparison showed that the cost incurred by KEPCO, as evidenced by the SMP, was significantly higher than KEPCO's tariff schedule rates for off-peak electricity. Third Remand Redetermination at 23 (citing NSA at 10-11). But as Commerce explained, the SMP is "neither an appropriate proxy for the cost of electricity to KEPCO at any given hour, nor does a 'similar' SMP across all hours necessarily indicate that the quantity of electricity purchased from KEPCO's generation companies was precisely the same at any given hour." Third Remand Redetermination at 23. Moreover, Nucor's NSA compared the variable cost of electricity paid by POSCO (the SMP) to the total average cost incurred by the generators, which does not

7

account for the other fixed charges in the tariff schedule that POSCO *always* pays as a portion of its price for electricity in accordance with the industrial tariff schedule. Third Remand Redetermination at 24 (citing NSA, C.R. 182-184 at Exh. 4). This comparison is not an appropriate reflection of benefit because it compares only one portion of a price to the total average cost incurred. Third Remand Redetermination at 23-25.

Further, Nucor's argument that the demand charge—one of the fixed charges included in the price paid by companies for electricity—is unrelated to KEPCO's cost of acquisition is equally unpersuasive. Commerce must determine whether adequate remuneration was paid for the good being provided. A comparison of the SMP, which at best represents only the variable portion of the price being paid, is not an appropriate measure of adequacy of remuneration, as it is not reflective of the price being paid by POSCO for the good in question. Thus, even if the Court were to agree with Nucor, contrary to the Federal Circuit's decision upholding Commerce's market principles analysis for the overarching Korean electricity system, in *POSCO v. United States*, Ct. No. 2022-1525, 2023 WL 6969789 (Fed. Circ. Oct. 23, 2023), and find that Commerce must engage in a transaction-based comparison in a tier-three scenario, the SMP would not serve as an appropriate point of comparison. Also, contrary to Nucor's assertions, Commerce's established practice in every Korean case involving electricity for LTAR has been to compare the total price paid (*i.e.*, both the fixed and variable costs of electricity) to the total benchmark price in an electricity LTAR analysis, regardless of whether the charges are incurred on a per-hour basis. *See, e.g., Corrosion-Resistant Steel Products from the Republic of Korea*, 80 Fed. Reg. 68,842 (Dep't of Commerce Nov. 6, 2015) (prelim det.), and accompanying PDM at 21 (discussing how KEPCO's costs incurred include fixed and variable costs); *unchanged in*

8

*Corrosion-Resistant Steel Products from the Republic of Korea*, 81 Fed. Reg. 35,310 (Dep't of Commerce June 2, 2016) and accompanying IDM.

Finally, Nucor's proposed initiation standard, in which Commerce is "obligated" to "accept allegations at face value" even if record facts contradict the basis of the allegation is contrary to the statute.  Under this standard, Commerce would be required to initiate even in the face of contrary evidence if a subsidy "likely exists."  Nucor Cmts. at 11.  Petitioners are required, under 19 U.S.C. § 1671a, to allege the elements necessary for the imposition of duty.  And *RZBC Group* states that Commerce may decline to initiate an investigation if the allegation "is not reasonably supported by the facts alleged."  Third Remand Redetermination at 29 (quoting *RZBC Group*, 100 F. Supp. 3d at 1295).  Here, Commerce reviewed Nucor's allegation of benefit, which was based solely on a comparison of the SMP to the total average cost incurred by the generators, and explained why such a comparison was not an appropriate basis for a benefit allegation.  Third Remand Redetermination at 23.  Thus, Nucor's argument that Commerce erred in considering prevailing market conditions in determining whether its benefit allegation was sufficient is inconsistent both § 1677(5)(E)(iv), and with Commerce's directive when reviewing subsidy allegations under § 1671a.

### III. Commerce Was Not Required To Initiate On Nucor's Untimely New Allegation Of Benefit

The only other basis for alleging a benefit that Nucor raised in the underlying proceeding, as referenced in the Third Remand Order, was an analysis based on KEPCO's KHNP acquisition cost.  *See* Third Remand Order, 698 F. Supp. 3d at 1315.  This comparison is not the same as Nucor's original comparison of the SMP to *total average cost incurred* by the generators.  *See* Nucor Cmts. at 9 (where Nucor agrees that it *did not* base its initial allegation on KEPCO's lowest cost generator).  As Commerce explained in the Third Remand Redetermination, although

9

the power trading statistics for KHNP were provided by Nucor through KEPCO's Form 20-F, Nucor did not make any allegation of benefit based on this information, nor did it claim that the information was pertinent to Commerce's review of an alleged benefit, until its Request for Reconsideration. *See* Third Remand Redetermination at 24-25 (citing Request for Reconsideration, C.R. 254, at 7-8). Indeed, Nucor's only support for its claim that it filed a timely allegation is a single footnote citation to Nucor's Form 20-F in its supplemental questionnaire response. Nucor Cmts. at 8-9. This is not, by any reasonable interpretation, a modification of its benefit allegation to allege an entirely new benefit allegation based on KEPCO's KHNP acquisition cost. Commerce has no obligation to consider, or reconsider, realleged subsidy allegations that were submitted past the deadline in response to Commerce's rejection of a timely filed allegation. Under 19 C.F.R. § 351.301(c)(2)(iv)(B), Commerce need only consider timely filed allegations, *i.e.*, allegations filed 20 days after all responses to initial questionnaires are filed. Commerce provided Nucor an opportunity to amend its allegation or provide additional information, and Nucor continued to rely on a comparison between the SMP and total average cost incurred by the generators for its Supplemental Questionnaire Response. Third Remand Redetermination at 27 (citing NSA SQR, P.R. 94 at 4-5).

      Nucor's belated submission does not mean that Commerce failed to address record evidence, as Nucor erroneously contends. *RZBC Group* does not require that parties continuously be allowed to raise new allegations and arguments past the regulatory deadline for new subsidy allegations. Entertaining untimely allegations is contrary to Commerce's regulations, which require that NSAs be properly alleged 20 days after the filing of all initial questionnaire responses in an administrative review, and would create a scenario in which

10

petitioners could continue to submit different variations of their allegation until they find one that Commerce finds sufficient without regard for the regulatory deadline.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's Third Remand Redetermination and enter judgment for the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:      /s/ Elizabeth A. Speck
W. Mitch Purdy      ELIZABETH A. SPECK
Senior Attorney      Senior Trial Counsel
U.S. Department of Commerce      Commercial Litigation Branch
Office of the Chief Counsel for Trade      Civil Division
  Enforcement and Compliance      United States Department of Justice
1401 Constitution Avenue, NW      P.O. Box 480
Washington, D.C. 20230      Ben Franklin Station
Tel: (202) 482-5214      Washington, D.C. 20044
Fax: (202) 482-4912      Tel: (202) 307-0369
Email: William.Purdy@trade.gov      Fax: (202) 514-7965
     Email: elizabeth.speck@usdoj.gov

October 18, 2024      Attorneys for Defendant, United States

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, the public version of the brief contains a total of 2,929 words.

/s/ Elizabeth Speck

October 18, 2024