Slip Op. 25-27

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NUCOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>POSCO,<br><br>Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge<br>Court No. 21-00182 |

### OPINION

[Sustaining the U.S. Department of Commerce's third remand results for the 2018 administrative review of the countervailing duty order on certain carbon and alloy steel cut-to-length plate from the Republic of Korea.]

Dated: March 21, 2025

Alan H. Price, Christopher B. Weld, Maureen E. Thorson, and Adam M. Teslik, Wiley Rein LLP, of Washington, DC, for Plaintiff Nucor Corporation.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Tara K. Hogan, Assistant Director, and Elizabeth A. Speck, Senior Trial Counsel. Of counsel on the brief was W. Mitch Purdy, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Jordan L. Fleischer, Nicholas C. Duffy, and Ryan R. Migeed, Morris, Manning & Martin, LLP, of Washington, DC, for Defendant-Intervenor POSCO.

Barnett, Chief Judge:  This matter is before the court following the U.S.

Department of Commerce's ("Commerce" or "the agency") third redetermination upon

remand.  *See* Confid. Final Results of Redetermination Pursuant to Third Ct. Remand

("Third Remand Results"), ECF No. 112-1.

Plaintiff Nucor Corporation ("Nucor") commenced this case challenging

Commerce's final results in the 2018 administrative review of the countervailing duty

order on certain carbon and alloy steel cut-to-length plate from the Republic of Korea

("Korea").  Compl., ECF No. 5; *Certain Carbon and Alloy Steel Cut-to-Length Plate*

*From the Republic of Korea*, 86 Fed. Reg. 15,184 (Dep't Commerce Mar. 22, 2021)

(final results and partial recission of countervailing duty admin. review, 2018) ("*Final*

*Results*"), ECF No. 18-4, and accompanying Issues and Decision Mem., C-580-888

(Mar. 16, 2021), ECF No. 18-5.[1]  For the *Final Results*, Commerce calculated a 0.49

percent *ad valorem* subsidy rate (considered *de minimis*) for POSCO.  86 Fed. Reg. at

15,185.  Nucor challenged Commerce's determination not to initiate an investigation into

the alleged provision of off-peak electricity for less than adequate remuneration

("LTAR") and Commerce's determination that the transactions between mandatory

respondent POSCO and its affiliate POSCO Plantec ("Plantec") were not primarily

dedicated to the downstream product such that any subsidies to Plantec would be

attributable to POSCO through a cross-owned input supplier analysis.  *See generally*

---

[1] The administrative record for the Third Remand Results is contained in a Public
Remand Record, ECF No. 115-1, and a Confidential Remand Record, ECF No. 115-2.
The parties submitted joint appendices containing record documents cited in their
comments.  [Confid. 2nd Remand] J.A., ECF No. 102; [Public 2nd Remand] J.A., ECF
No. 103.

Court No. 21-00182                                                                Page 3

Confid. Nucor Corp.'s Mem. In Supp. of its Rule 56.2 Mot. For J. on the Agency R., ECF No. 22.

In *Nucor Corp. v. United States* (*Nucor I*), 46 CIT __, 600 F. Supp. 3d 1225 (2022), the court remanded Commerce's determination not to initiate an investigation into off-peak electricity pricing and remanded in part Commerce's determination with respect to Plantec for reconsideration with regard to the supply of scrap and a converter vessel.  On January 31, 2023, Commerce filed its redetermination.  Confid. Final Results of Redetermination Pursuant to Ct. Remand ("First Remand Results"), ECF No. 60-1.  Therein, Commerce provided further explanation for its determinations and made no changes to POSCO's subsidy rate.  *Id.* at 11–33, 38–52, 55–72.

The court sustained Commerce's First Remand Results in part and remanded in part.  *Nucor Corp. v. United States* (*Nucor II*), 47 CIT __, 653 F. Supp. 3d 1295, 1304 (2023).  With respect to Commerce's determination not to investigate off-peak electricity pricing, the court found that Commerce was "[in]consistent in its statement of the applicable standard and its application of that standard."  *Id.* at 1302–03.  With respect to Plantec's supply of scrap and the converter vessel, while the court sustained Commerce's identification of factors relevant to the inquiry, the court remanded Commerce's determination with respect to the supply of scrap and a converter vessel. *Id.* at 1307, 1310–13.

On December 19, 2023, Commerce filed its second redetermination.  Final Results of Redetermination Pursuant to Second Ct. Remand ("Second Remand Results"), ECF No. 93-1.  Therein, Commerce provided further explanation for its

determination not to investigate off-peak electricity pricing.  *Id.* at 5–15, 24–25.

Commerce asserted a different basis for declining to attribute subsidies received by

Plantec to POSCO, now finding that the companies were not cross-owned pursuant to

19 C.F.R. § 351.525(b)(6)(vi)[2] because POSCO did not control Plantec's assets during

the 2018 period of review.  *Id.* at 18–22, 28–30.

       The court sustained Commerce's Second Remand Results in part and remanded

in part.  *Nucor Corp. v. United States* (*Nucor III*), 48 CIT __, 698 F. Supp. 3d 1310, 1320

(2024).[3]  The court once again instructed Commerce to reconsider or explain further its

decision not to investigate POSCO's purchase of off-peak electricity in isolation from the

broader time of usage system.  *Id.* at 1320.[4]  The court sustained the agency's

determination that cross-ownership did not exist between POSCO and Plantec because

POSCO did not control Plantec during the period of review.  *Id.* at 1319.

---

[2] Commerce's regulation states that

    [c]ross-ownership exists between two or more corporations where one
    corporation can use or direct the individual assets of the other
    corporation(s) in essentially the same ways it can use its own assets.
    Normally, this standard will be met where there is a majority voting
    ownership interest between two corporations or through common
    ownership of two (or more) corporations.

19 C.F.R. § 351.525(b)(6)(vi).

[3] *Nucor I*, *Nucor II*, and *Nucor III* present background information, familiarity with which
is presumed.

[4] The court held in both *Nucor II* and *Nucor III* that Commerce did not sufficiently
address the information Nucor provided regarding the relationship between the
weighted-average off-peak prices paid by POSCO and the Korean authority's cost of
acquiring electricity from its lowest cost generator.  *Nucor II*, 653 F. Supp. 3d at 1304;
*Nucor III*, 698 F. Supp. 3d at 1315–17.  That authority, Korea Electric Power
Corporation ("KEPCO"), "purchases electricity from generators [through] the Korea
Power Exchange . . ., which 'is the system operator[ ] and the supplier' of electricity to
KEPCO."  *Id.* at 1314 n.7 (second alteration in original) (citation omitted).

Court No. 21-00182                                                      Page 5

On August 15, 2024, Commerce filed the Third Remand Results. Therein, Commerce clarified and further explained its determination not to investigate off-peak electricity pricing in isolation from the time of usage system. Third Remand Results at 16. Commerce discussed the applicable initiation standard and further explained that Nucor did not provide information that was "reasonably available" to Nucor to support its subsidy allegation. *Id.* at 3. Commerce also found that even if Nucor had provided more information to support its allegation, the agency had no obligation to consider such additional information, because the deadline for a new subsidy allegation and for submitting supplemental responses had already passed. *Id.* at 27.

Nucor filed comments opposing Commerce's Third Remand Results. Nucor Corp.'s Cmts. in Opp'n to Third Remand Results ("Nucor's Cmts."), ECF No. 116. Defendant United States ("the Government") and Defendant-Intervenor POSCO each filed comments in support of the Third Remand Results. Def.'s Resp. to Pl.'s Cmts. Regarding the Third Remand Redetermination ("Def.'s Cmts."), ECF No. 117; POSCO's Cmts. in Supp. of Commerce's Remand Redetermination ("POSCO's Cmts."), ECF No. 118. For the following reasons, the court sustains Commerce's Third Remand Results.

**JURISDICTION AND STANDARD OF REVIEW**

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[5] and 28 U.S.C. § 1581(c).

The court will uphold an agency determination that is supported by substantial evidence

and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

**I.    Commerce's Initiation Standard**

Commerce "shall" initiate a countervailable duty investigation "whenever an

interested party" files a petition "on behalf of an industry" that "alleges the elements

necessary for the imposition" of a countervailing duty and provides "information

reasonably available to the petitioner supporting those allegations."  19 U.S.C. §

1671a(b)(1).  Commerce decides whether to initiate an investigation based on the

"accuracy and adequacy of the evidence provided in the petition."  19 C.F.R. §

351.203(b)(1); *see also* 19 U.S.C. § 1671a(c)(1)(A).

"[M]ost subsidy petitions are granted unless the allegations 'are clearly frivolous,

not reasonably supported by the facts alleged or . . . omit important facts which are

reasonably available to the petitioner."  *RZBC Grp. Shareholding Co. v. United States*,

39 CIT 1076, 1082, 100 F. Supp. 3d 1288, 1295–96 (2015).  In some circumstances,

what has sometimes been described as a heightened standard may apply.  "When

allegations concern a program previously held non-countervailable," Commerce may

---

[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

"require[] a petition to contain evidence of changed circumstances . . . before an investigation is initiated."  *Delverde, SrL v. United States*, 21 CIT 1294, 1296–97, 989 F. Supp. 218, 222 (1997), *vacated on other grounds by Delverde, SrL v. United States*, 202 F.3d 1360 (Fed. Cir. 2000); *see also Bethlehem Steel Corp. v. United States*, 25 CIT 307, 315, 140 F. Supp. 2d 1354, 1363 (2001) (applying this standard).

In *Nucor III*, the court noted that Commerce, in the Second Remand Results, claimed that "the initiation standard applied in *RZBC [Group]* and *Delverde* are one and the same."  698 F. Supp. 3d at 1314 (quoting Second Remand Results at 9 n.39). Commerce categorized the standards this way because, in the agency's view, "allegations concerning a program that 'is a subset of a previously investigated program' implicates 'more information [that is] reasonably available to the petitioner and the legal standard for initiation requires that the petitioner address or account for that additional information.'"  *Id.* (alteration in original) (quoting Second Remand Results at 9).

Commerce had explained that, for the agency to initiate an investigation into off-peak electricity in isolation from the entirety of the time of usage system, Nucor had to "demonstrate how the average price of electricity reflected the price of electricity at off-peak hours, considering potential differences in the generators in terms of operation, usage, etc. at different hours."  *Id.* at 1315 (quoting Second Remand Results at 14).

In *Nucor III*, the court noted that Nucor "arguably" provided such an explanation when it compared KEPCO's cost of acquiring electricity from its lowest cost generator to the weighted-average off-peak price paid by POSCO.  *Id.*  The court instructed Commerce, once again, to address Nucor's off-peak electricity pricing allegation and

consider it within the context of the broader market principles involving the Korean

electricity market.  *Id.*[6]

## II.    Commerce's Third Remand Results

In the Third Remand Results, Commerce restated that "there is only one

standard for initiation of a subsidy allegation and that is the standard enacted by

Congress [and] . . . both *RZBC Group* and *Delverde* support this view: the allegation

must be supported by information reasonably available to the petitioner."  Third Remand

Results at 9–10.[7]

Commerce also referenced the Statement of Administrative Action ("SAA"),

which provides for Commerce to "examine the accuracy and adequacy of the evidence

provided in a petition to determine whether the evidence is sufficient to justify initiation

of an investigation."  *Id.* at 8 (citing Uruguay Round Agreements Act, SAA, H.R. Doc.

No. 103–316, vol. 1, at 861 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4192).[8]

---

[6] The court explained that, to the extent that Commerce addressed Nucor's allegation surrounding KEPCO's cost of acquiring electricity from its lowest cost generator to KEPCO's weighted-average off-peak price paid by POSCO, it did so in a "conclusory and confusing fashion" and that the agency "failed to consider Nucor's allegation within" the context of the Korean electricity market.  *Nucor III*, 698 F. Supp. 3d at 1316.

[7] The statutory standard, 19 U.S.C. § 1671a(b)1, states:

A countervailing duty proceeding shall be initiated whenever an interested party . . . files a petition with the administering authority, on behalf of an industry, which alleges the elements necessary for the imposition of the duty imposed by section 1671(a) of this title, and which is accompanied by information reasonably available to the petitioner supporting those allegations.

[8] Congress expressly approved the SAA as the authoritative interpretation of the statute.  19 U.S.C. § 3512(d).

Commerce again noted that while the initiation standard is low, the petitioner nevertheless "must support each of the elements of a subsidy with information reasonably available to it." *Id.* at 9. Commerce explained that in *Delverde*, the petitioner had more information reasonably available to it as compared to the petitioner in *RZBC Group*, and the *Delverde* "petitioner was required under the statute to support its allegation with that 'reasonably available' information." *Id.* at 10.

Applying this standard, Commerce again found that Nucor's allegation and evidence were insufficient to warrant initiation of an investigation into off-peak electricity pricing. *Id.* at 29. Commerce found that Nucor's allegation of off-peak electricity for LTAR did not meet the initiation standard because "it was 'not reasonably supported by the facts alleged' and 'omit[ted] important facts'" that were reasonably available to Nucor. *Id.* at 29 & n.100 (alteration in original) (citing *RZBC Grp.*, 39 CIT at 1082, 100 F. Supp. 3d at 1295).

Commerce explained that for Nucor to satisfy the initiation standard and sufficiently support its allegation regarding off-peak electricity for LTAR, Nucor needed to provide evidence satisfying three criteria.[9] *Id.* at 11. Commerce found that Nucor "failed to provide any information" in support of these three criteria sufficient to warrant initiation consistent with the statute and *RZBC Group*. *Id.* at 12.

Commerce also acknowledged that, in its previous redeterminations on remand, it did not "sufficiently focus on the key reason" Nucor's off-peak electricity for LTAR allegation failed to support initiation. *Id.* at 13. That key reason was that "Nucor failed

---

[9] The three criteria are discussed below in the section IV.

to provide sufficient information that an examination of off-peak electricity in isolation [from] the entire market-based tariff schedule would be consistent with the prevailing market conditions for electricity." *Id.* Commerce further explained that only if Nucor had first made this demonstration would it have been appropriate to investigate off-peak electricity in isolation from KEPCO's overarching tariff schedule. *Id.* at 13, 15–16.

Commerce also asserted an alternative reason for not initiating an investigation on Nucor's allegation. *Id.* at 27. Commerce found that it had no obligation to consider Nucor's benefit allegation that was based on the Korea Hydro and Nuclear Power Company Ltd.'s ("KHNP") power trading statistics, because that information was provided "past the deadline for [a new subsidy allegation] and the deadline for submitting supplemental responses." *Id.*; *see also* 19 C.F.R. § 351.301(c)(2)(iv)(B).

## III. Parties' Contentions

Nucor contends that Commerce failed to identify and consistently apply a clear legal standard in the Third Remand Results. Nucor's Cmts. at 2. Nucor argues that "there is no basis in the statute, the rules, or agency practice for treating adequacy of remuneration in terms of some degree of consistency with or presence within or outside of the 'prevailing market conditions'" in the relevant country. *Id.* at 4.

Nucor also objects to having been required to demonstrate that KEPCO's off-peak electricity prices conflict with the prevailing market conditions in Korea and argues that the standard should be consistency with "market principles." *Id.* Nucor contends that because KEPCO is the sole electricity provider in Korea, it could not possibly have

established that KEPCO's operations were "'outside of' the prevailing market conditions." *Id.* at 5.

Nucor argues that Commerce's chosen initiation standard is vague and reflects the agency's "refusal to consider whether individual prices in a [time of usage] system may be subsidized prices" without considering the overarching tariff schedule. *Id.* at 5–6. Nucor also asserts that Commerce's determination that the benefit allegation based on KHNP's power trading statistics was untimely is "unfounded." *Id.* at 7.

The Government contends that Commerce articulated and applied the correct initiation standard in the Third Remand Results, and Nucor failed to consider the broader time of usage system and KEPCO's tariff schedule in its allegation of off-peak electricity for LTAR. Def.'s Cmts. at 5–6. Consistent with 19 U.S.C. § 1671a(b)(1) and 19 C.F.R. § 351.511, the Government explains that "[f]or Commerce to initiate on a subsidy allegation that involves a portion of a tariff schedule Commerce has already determined necessitates a tier three analysis, the allegation must consider how the overarching electricity system is designed." *Id.* at 6.[10]

---

[10] With respect to the reference to a tier three analysis, when a world market price is unavailable, as is the case here, adequacy of remuneration is measured by assessing whether the government's price is consistent with market principles. *See* 19 C.F.R. § 351.511(a)(2)(iii).

    The Government also references the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") decision in *Nucor Corp. v. United States*, 927 F.3d 1243 (Fed. Cir. 2019) ("*Nucor CAFC*"). Def.'s Cmts. at 6. There, the appellate court upheld Commerce's finding that "KEPCO's pricing met familiar standards of cost recovery" and that there was an "absence of preferential rates" in KEPCO's overarching tariff schedule based on the time of usage system. *Nucor CAFC*, 927 F.3d at 1254–55.

The Government further states that Commerce correctly found that "Nucor's allegation was inconsistent with Commerce's prior analysis of known factors in the Korea[n] electricity system," and Nucor ignored "the overarching design of the electricity system in making its allegation." *Id.* at 3. The Government contends that the Third Remand Results comply with the court's order and should be sustained. *Id.* at 7, 11.

POSCO indicates that the court must consider the issue within the context of the Federal Circuit's affirmance of Commerce's finding that KEPCO's aggregated-cost setting methodology was "consistent with market principles." POSCO's Cmts. at 2. POSCO also reiterates that Nucor's allegation neglected to consider the time of usage system in which the off-peak prices exist. *Id.*

## IV. Commerce's Third Remand Results Will Be Sustained

With respect to Commerce's finding regarding the initiation standard, Commerce relied upon the standard set forth in the text and legislative history of 19 U.S.C. § 1671a(b)1. The court previously explained that "[t]here need not be a strictly binary choice between the *RZBC Group* standard and the heightened standard of *Delverde*." *Nucor II*, 653 F. Supp. 3d at 1302. In its Third Remand Results, Commerce found that in all cases, the petitioner must support its allegation with information reasonably available to it, based on the circumstances. Third Remand Results at 10. Commerce then applied this standard to Nucor's allegation and continued to find that Nucor did not provide information sufficient to satisfy the initiation standard. *Id.* at 11–12.

In reviewing Commerce's Third Remand Results, the court recognizes that the agency has now addressed an issue the court previously raised, namely, whether the

off-peak electricity pricing in KEPCO's tariff schedule constitutes a program that should be investigated in isolation from the overarching time of usage system. *See* Oral Arg. at 36:45–37:30 (time stamp from the recording, on file with the court).[11]  The court previously asked the Parties to discuss whether KEPCO's off-peak electricity pricing should or could be investigated in isolation from the overarching tariff schedule and time of usage system. *See, e.g.*, *id.*  At the time, the Government responded that Nucor had not provided enough detail in its allegation to explain how off-peak electricity pricing itself was a specific benefit and, further, was a benefit provided to steel producers. *Id.* at 36:50–37:10.  The Government acknowledged, however, that while this was Commerce's position, such an explanation did not appear in the record. *Id.* at 37:30–37:40.  Nucor responded that off-peak electricity was a program separate from the one previously investigated by Commerce because KEPCO's aggregated-cost setting methodology resulted in different pricing throughout the day. *Id.* at 13:12–13:57. POSCO opined that off-peak electricity was a subset of KEPCO's broader time of usage program and Commerce "can't analyze a subset in a vacuum." *Id.* at 50:35–51:14.

In the Third Remand Results, Commerce directly addressed whether KEPCO's off-peak electricity pricing should be investigated separate from KEPCO's overarching time of usage system.  Third Remand Results at 10–13.  Commerce explained that for Nucor properly to allege that KEPCO's off-peak pricing is inconsistent with market principles, Nucor must address the overall time of usage system and Commerce's

---

[11] The court heard oral argument on Nucor's Rule 56.2 motion on September 14, 2022. Docket Entry, ECF No. 49.

finding that the overall system is consistent with market principles. *Id.* at 19–20, 29; *see also Nucor CAFC*, 927 F.3d at 1254 (holding that KEPCO's time of usage cost setting methodology and entire tariff schedule were consistent with market principles).

As discussed above, Commerce had previously determined that KEPCO's overarching time of usage system is consistent with market principles because KEPCO's tariff schedule, which is based on aggregated costs and revenue, fully recovers its costs and produces a profit. Third Remand Results at 29. Commerce acknowledged that, in hindsight, the agency "did not sufficiently focus on the key reason Nucor's [new subsidy allegation] ultimately fails," which is that KEPCO's off-peak electricity pricing should not be investigated without first taking account of the entire market-based tariff schedule, which itself was determined to be consistent with market principles and accepted standards of cost recovery. *Id.* at 13.[12]

Commerce explained that to justify a new subsidy investigation of this subset of the broader electricity pricing scheme, Nucor needed to provide information addressing three criteria:

> (1) KEPCO's aggregated cost and revenue methodology used to set its tariff schedule is inconsistent with market principles; (2) KEPCO's aggregated costs and revenue methodology is not an acceptable or recognized methodology for the pricing of electricity; and (3) the only recognized tariff-setting methodology is one where the electricity company establishes tariffs which ensure that at every point during the 24 hours in a day, and for every day of the year, the company is providing electricity at a price which collects revenue to fully cover all of its costs.

---

[12] Nucor's allegation of off-peak electricity for LTAR "is part, or a subset of, KEPCO's overall electricity tariff schedule, which . . . has been determined to be consistent with market principles." Third Remand Results at 11.

*Id.* at 11.

With respect to the first two criteria, Commerce explained that the Federal Circuit affirmed Commerce's earlier finding that KEPCO's methodology for setting its overall tariff schedule is consistent with market principles, and that KEPCO's aggregated costs and revenue methodology (based on the time of usage system) demonstrated "familiar standards of cost recovery." *Id.* at 14; *see also Nucor CAFC*, 927 F.3d at 1253–55. KEPCO's tariff schedule allowed it to recoup all costs and generate a profit. Third Remand Results at 11. As Commerce noted, "Nucor did not allege that KEPCO provides electricity at 'consistently low prices that no market participant could sustain.'" *Id.* at 15 & n.50 (quoting *Nucor CAFC*, 927 F.3d at 1251). According to Commerce, Nucor did not provide any information that "address[ed] or refute[d]" Commerce's earlier finding, confirmed by the Federal Circuit, that KEPCO's tariff schedule and revenue methodology demonstrated cost recovery. *Id.* at 19. Commerce further confirmed that Nucor's allegation and evidence did not allege that KEPCO's tariff schedule and reliance on the time of usage system were inconsistent with market principles. *Id.* at 12–13, 17.

Commerce then explained that while Nucor also did not provide any evidence in support of the third criterion, even if Nucor had done so, it would have been "without merit." *Id.* at 12. In particular, Nucor did not allege or suggest that the only recognized tariff-setting methodology for the supply of electricity would be one that covered all costs on every sale, twenty-four hours per day, seven days per week. In the Third Remand Results, Commerce appears to have taken a holistic view of KEPCO's tariff-setting

methodology while suggesting that unspecified, but also unusual, circumstances might give the agency justification to look at a subset of electricity prices within a time of usage system, but that Nucor did not demonstrate, or even attempt to demonstrate, that such circumstances were present here.  *See generally id*. at 12–20.

Substantial evidence supports Commerce's consideration of each of the three criteria.  First, Nucor did not provide evidence demonstrating that KEPCO's aggregated cost and revenue methodology was inconsistent with market principles.  Pursuant to 19 C.F.R. § 351.511(a)(2)(iii), Commerce's analysis of market principles includes: a return on investment, rates of return sufficient to ensure future operations, and a lack of price discrimination.  KEPCO's tariff schedule has been found to produce funds sufficient to cover its aggregate costs and produce a profit, and it demonstrated a lack of price discrimination, all of which are consistent with market principles pursuant to 19 C.F.R. § 351.511(a)(2)(iii).[13]  Third Remand Results at 17, 29, 38.  Because Nucor did not supply evidence with its allegation sufficient to call this earlier finding into question, Commerce's finding with respect to this criterion is supported by substantial evidence.

Second, Nucor did not provide evidence demonstrating that KEPCO's aggregated cost and revenue methodology, as a whole, was not considered a recognized system of cost recovery.  *Id.* at 15.  When reviewing KEPCO's broader time of usage system, the Federal Circuit held that KEPCO's aggregated cost and revenue

---

[13] Goods and services provided solely by a government will be assessed for consistency with market principles based on "an analysis of such factors as the government's price-setting philosophy, costs (including rates of return sufficient to ensure future operations), or possible price discrimination."  *Countervailing Duties*, 63 Fed. Reg. 65,348, 65,378 (Dep't Commerce Nov. 25, 1998) (final rule).

Court No. 21-00182                                                        Page 17

methodology used to create the entire tariff schedule met "familiar standards of cost recovery." *Nucor CAFC*, 927 F.3d at 1254. Those familiar standards convey that the price users paid for the electricity reflected the value of the electricity and included returns sufficient to ensure future operations, which is a familiar form of rate-regulation for public utilities. *Id.* Again, Nucor did not provide evidence demonstrating how KEPCO's aggregated cost and revenue methodology, which aligns with accepted principles of cost recovery, is not an acceptable or recognized methodology for electricity pricing and, therefore, Commerce's finding regarding this criterion is supported by substantial evidence.

        Third, Nucor did not demonstrate that the only electricity tariff-setting methodology that is consistent with market principles is one in which, at every point during the day and for every day of the year, the utility is providing electricity at a price which collects revenue sufficient to cover all its costs. KEPCO's tariff schedule is based on a time of usage system, and it recovers costs and produces a return on investment, which is consistent with market principles, as well as principles of adequate remuneration pursuant to 19 C.F.R. § 351.511(a)(2)(iii). Third Remand Results at 10-11. Therefore, even if KEPCO's tariff-setting methodology might sometimes allow for individual prices that are not sufficient to recover all costs, the overall methodology remains consistent with market principles. Nucor did not allege or suggest that the only recognized tariff-setting methodology was one that recovers costs twenty-four hours a day, and Commerce's consideration of this criterion is supported by substantial evidence.

Nucor maintains that KEPCO's off-peak electricity pricing should be investigated without considering the market-based tariff schedule and time of usage system in which it exists.  Nucor's Cmts. at 7.  Commerce determined that the rates in KEPCO's market-based tariff schedule, which includes the off-peak prices, ensure that KEPCO's aggregate revenue covers all its costs, including taxes, and ultimately produces a profit. The court recognizes that such attributes are consistent with market principles and principles of adequate remuneration pursuant to 19 C.F.R. § 351.511(a)(2)(iii). Commerce's requirement that Nucor's allegation take account of this information is consistent with the statute and established case law.  *See* 19 U.S.C. § 1671a(b)(1); *RZBC Grp.*, 39 CIT at 1082, 100 F. Supp. 3d at 1295–96; *Delverde*, 21 CIT 1294, 1296–97, 989 F. Supp. 218, 222.  Furthermore, KEPCO's tariff schedule does not result in the utility losing money or providing preferential rates to certain industries or enterprises.  This attribute is also consistent with market principles pursuant to 19 C.F.R. § 351.511(a)(2)(iii) and has been affirmed by the Federal Circuit.  *Nucor CAFC*, 927 F.3d at 1254–55.

Accordingly, substantial evidence supports Commerce's finding that Nucor's allegation of off-peak electricity for LTAR did not satisfy the agency's three criteria. Moreover, Commerce reasonably determined not to investigate KEPCO's off-peak electricity pricing for LTAR in isolation from the broader time of usage system.  For these reasons, Commerce's Third Remand Results will be sustained.

Commerce alternatively found that it had no obligation to consider Nucor's benefit allegation that was based on KHNP's power trading statistics because it was

Court No. 21-00182                                                                    Page 19

provided past the twenty-day deadline for a new subsidy allegation.  Third Remand

Results at 27.  Because the court will sustain Commerce's Third Remand Results based

on its analysis pursuant to the three criteria, the court need not further address this

aspect of Commerce's determination.

CONCLUSION

For the reasons discussed above, the court will sustain Commerce's Third

Remand Results.  Judgment will enter accordingly.


                                                    /s/      Mark A. Barnett____
                                                    Mark A. Barnett, Chief Judge

Dated: March 21, 2025 ____
           New York, New York